In the Matter of GUPTILL HOLDING CORPORATION, Appellant, v HENRY G. WILLIAMS, as Commissioner of the Department of Environmental Conservation of the State of New York, et al., Respondents, and FREDERICK W. BURGESS et al., Intervenors-Respondents.

Third Department, July 28, 1988

### APPEARANCES OF COUNSEL

*Lombardi, Devorsetz, Stinziano & Smith (Albert M. Ferlo, Jr.,* and *William J. Gilberti, Jr.,* of counsel), for appellant.

*Robert Abrams, Attorney-General (Joel F. Spitzer, Peter H. Schiff* and *John Proudfit* of counsel), for respondents.

*McNamee, Lochner, Titus & Williams, P. C. (George F. Carpinello* of counsel), for intervenors-respondents.

### OPINION OF THE COURT

LEVINE, J.

Petitioner is a domestic corporation that has operated a sand and gravel mine on its 110-acre parcel of land in the Town of Colonie, Albany County. Concededly, the mining operation was subject to regulation by respondent Department of Environmental Conservation (hereinafter DEC) under the Mined Land Reclamation Law (hereinafter MLRL) (ECL 23-2701 *et seq.),* which went into effect in April 1975 (L 1974, ch 1043, § 2). However, petitioner first applied for a permit from DEC to operate its mine in March 1981. Petitioner's application sought permission to mine two specifically identified acres of the plot during an initial permit term of one year. In June 1981, petitioner filed an amended application to mine some eight acres for a three-year term. Each application was accompanied by a mined land-use plan and map as required by the statute *(see,* ECL 23-2713). DEC examined the plan to determine its potential environmental impact pursuant to the State Environmental Quality Review Act (hereinafter SEQRA) (ECL art 8), and found petitioner's project to be an "unlisted action" *(see,* 6 NYCRR 617.12) which "will not have a significant effect on the environment". In March 1982, the permit was granted,

applicable "only to the project defined by the Mined Land Use Plan", to expire September 9, 1984.

Shortly before the permit's expiration date, petitioner submitted a formal request for a three-year renewal of its permit, which it designated as a "renewal with amendment application". In the application, petitioner described the area to be affected by mining in the first year of the renewal period as 16 acres, including continued mining of the 8 acres licensed under the initial permit. At the same time, or soon thereafter, petitioner submitted a new mined land-use plan and maps. On September 27, 1984, DEC responded with a notice of incomplete application in which it advised petitioner that the project would be subject to SEQRA review, that the Town of Colonie was designated as lead agency for that purpose and that the application would not be considered complete until the town determined the environmental significance of the project. The notice also specified some 12 items of additional information to be furnished, including a long-form environmental assessment. Admittedly, the foregoing requirements were based in part on DEC's application of its so-called "Life of Mine Review Policy", in which a permit application is subjected to SEQRA review covering the long-term effects of the project over the entire estimated productive period of the mine. Subsequently, the town's Planning Board sent petitioner a notice of its determination that the project would have a significant impact on the environment, listing 13 specific significant effects, and noted that the applicant proposed to extract sand and gravel from 89 acres of its property. The notice advised that a draft environmental impact statement would be required.

After almost two years of negotiations over the information that the town demanded, petitioner initiated a proceeding in Supreme Court and succeeded in obtaining a judgment declaring that the town lacked jurisdiction to act as lead agency. In January 1987, before the order in the foregoing litigation was granted, petitioner made a written demand on DEC for a decision on its renewal application. DEC responded by letter advising that petitioner's application was still incomplete, inasmuch as it had never received the information requested in its September 1984 notice and SEQRA review by the town had not yet reached its ultimate conclusion. Thus, according to DEC, petitioner's demand was premature. By letter of March 3, 1987, petitioner informed DEC of the judgment eliminating the town as lead agency and sent most of the

information previously sought in DEC's September 1984 notice, including a revised renewal application with amendment indicating an increase in affected land of over 44 acres for the three-year period of the renewal. In the same letter, petitioner, for the first time, challenged the need for a draft environmental impact statement and for other information allegedly sought pursuant to DEC's Life of Mine Review Policy. In DEC's reply, it advised that it had taken over lead agency status, that a positive declaration under SEQRA had been made and that the application remained incomplete until a draft environmental impact statement was submitted and approved. Following the foregoing exchange, petitioner initiated the present CPLR article 78 proceeding, in the nature of mandamus, to direct DEC to issue a renewal permit, to declare that petitioner is statutorily exempt from any SEQRA review and to restrain DEC from applying its Life of Mine Review Policy to petitioner's application. Petitioner appeals from Supreme Court's dismissal of its petition (137 Misc 2d 935).

█ Turning first to that portion of the petition in which the relief sought is based on petitioner's claim that it is statutorily exempt from SEQRA review, we agree with Supreme Court's rejection of this claim, but for a different reason than that of Supreme Court or that advanced by DEC on this appeal. The statutory provision relied upon is the so-called "grandfather clause" of SEQRA, ECL 8-0111 (5) (a), which exempts "[a]ctions undertaken or approved prior to the effective date of this article", i.e., September 1, 1976 (L 1975, ch 612, § 2, as amended by L 1976, ch 228, § 4). Petitioner submitted affidavits that it had continuously operated its sand and gravel mine on the subject property since the 1950's. DEC contends that the exemption applies only to activities which were otherwise subject to regulation and approved by a regulatory authority before the effective date of SEQRA. Therefore, according to DEC, petitioner is ineligible because of its failure to obtain a permit under MLRL until 1981.

This argument is, in our view, precluded by our interpretation of the statutory exemption in *Matter of Northeast Solite Corp. v Flacke* (91 AD2d 57, 60). Nonetheless, the exemption does not apply upon "proof of change in the level of operation so substantial as to be sufficient to remove an activity from the exclusion clause * * * notwithstanding that the basic nature of the activity remains unchanged" *(Matter of Salmon v Flacke,* 61 NY2d 798, 800). Here, the intervenors submitted

affidavits and photographs which would tend to establish such a difference in the level of petitioner's mining activities pre-1975 as compared to its currently proposed project. There was thus created a sharp conflict of fact on petitioner's entitlement to the exemption, which Supreme Court could not resolve against petitioner, as it did, on the parties' written submissions. However, the existence of a sharply disputed factual question on the exemption issue in and of itself was sufficient to preclude mandamus relief, which may be granted only to enforce a clear legal right *(Matter of Colonial Beacon Oil Co. v Finn,* 245 App Div 459, 461, *affd* 270 NY 591; *Matter of Petz v Property Clerk of 68th Squad,* 149 NYS2d 179, 180; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7801:4, at 31; 5 NY Jur 2d, Article 78 and Related Proceedings, § 58, at 447). The factual issue determining whether SEQRA can be applied to petitioner should, in the first instance, be resolved after a hearing by DEC, the administrative agency charged with the responsibility of implementing that legislation *(see, Shine v Duncan Petroleum Transp.,* 60 NY2d 22, 26; *Matter of Scanlon v State Ins. Fund,* 141 AD2d 902). We note in this regard the absence in the record of any explicit claim to the statutory exemption made by petitioner to DEC.

Next to be considered is petitioner's claim for relief on the ground that the Life of Mine Review Policy is invalid as being unauthorized under and inconsistent with the statutory framework and because it constitutes a rule or regulation unenforceable in the absence of DEC's compliance with the filing requirements of the NY Constitution *(see,* NY Const, art IV, § 8). The Life of Mine Review Policy, as described in a DEC internal memorandum, in substance requires a full SEQRA review of environmental effects during the entire estimated productive period of the mine, until the completion of reclamation, for (1) all applications for a new permit, and (2) renewal applications concerning mines which had not previously been subjected to such review. In essence, the policy will require one comprehensive examination of the long-term environmental effect of each mining operation subject to MLRL regulation.

We find nothing in that policy which is in conflict with the statutory scheme. MLRL project permit applications unquestionably are subject to SEQRA, and SEQRA review is an element of the permit and permit renewal process except, of course, for projects statutorily exempt from SEQRA, as previ-

ously discussed *(see,* 6 NYCRR 420.4). We have previously held that SEQRA may require comprehensive review of all separately proposed actions at a given geographic area to determine their cumulative environmental impact *(Matter of Save the Pine Bush v City of Albany,* 117 AD2d 267, 271, *mod* 70 NY2d 193). It appears entirely consistent with that rationale to require similar comprehensive review of the cumulative effect, over time, of the incremental steps of the progressive exploitation of mining property subsumed in the periodic permit renewal process of MLRL, as illustrated in the instant case. Nor was the policy inconsistent with MLRL. Indeed, the very concept of "reclamation", an elemental objective of MLRL in the statute's declaration of policy, in terms of conservation and protection of the environment *(see,* ECL 23-2703), assumes review of the long-term plans for the exploitation of mining property. Our holding that the Life of Mine Review Policy is statutorily authorized is not contrary to *Matter of Atlantic Cement Co. v Williams* (129 AD2d 84), relied upon by petitioner on this issue, for in that case we held that the petitioner was exempt from SEQRA.

■ Likewise, the Life of Mine Review Policy is not invalid because of DEC's failure to follow the constitutionally required procedure for promulgating a rule or regulation. As previously described, the policy merely requires DEC to consider in the permit process the long-term environmental effects of a mining project throughout its planned productive life, including reclamation. The Life of Mine Review Policy does not dictate the result of that review, either in terms of whether an environmental impact statement will be required or whether a permit will be issued. As such, the policy is not "a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers" *(Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951) and, hence, need not have been filed as a rule or regulation.

■ Petitioner's final argument is that, as a permit renewal application which DEC did not timely determine to constitute a material change from the original permit application, as required by the ECL's Uniform Procedures Act *(see,* ECL 70-0115 [2] [b]) and which, in fact, was not such a material change, DEC was barred from subjecting the application to comprehensive review under SEQRA and its Life of Mine Review Policy. Again, petitioner contends that our decision in

*Matter of Atlantic Cement Co. v Williams (supra)* dictates this conclusion. In *Atlantic Cement,* this court found that the previously approved permit and renewal applications encompassed the petitioner's entire project area and had already been reviewed for the same environmental concerns cited by DEC as material changes justifying renewed SEQRA review. The record in *Atlantic Cement,* notably the long-form environmental assessment form filed by the petitioner on a previous application, clearly supported that conclusion. Contrastingly, in the instant case, petitioner's 1981 applications not only failed explicitly to indicate its then existing plan to mine all of its acreage, but in fact suggested that it had no such plan and that the project was a limited one. That petitioner's 1981 applications were so considered by DEC is confirmed by DEC's determination that the project was an unlisted action, which would not have been so had the project involved the alteration of as much as 10 acres *(see,* 6 NYCRR 617.12 [b] [6] [i]). On the other hand, even ignoring for the moment the significance of petitioner's expressed present intent to extract materials from 89 acres over the life of its mine, petitioner's documents submitted without protest at the time or immediately after it filed its 1984 renewal application, including the maps of even date with the application, disclosed an intent to mine some 44 acres within the three-year term of the renewal permit. Consequently, there appears little question that the proposed renewal involved a significant change from the operations covered by the 1981 permit, justifying DEC's further review of any significant environmental effects and its demand for further information as to those effects.

Petitioner further argues that, even if its 1984 proposal did involve a material change from the original permit, DEC's failure to make an express determination thereof and to treat the application as a new application within 15 days of submission, as required under ECL 70-0115 (2) (b), precludes consideration of any such changes, again relying on *Matter of Atlantic Cement Co. v Williams (supra).* We disagree. First, the express statutory effect of a failure to make a timely determination that a renewal application involves a material change is that "the provisions of paragraph (b) of subdivision three of section 70-0109 of this chapter shall apply" (ECL 70-0115 [2]). ECL 70-0109 (3) (b) provides in substance that if DEC fails to make a decision on a permit application within the relevant statutory time period, the applicant may serve written notice of the default, after which the failure of DEC to render a decision

within five days results in the automatic granting of the application. However, in the instant case, it is uncontradicted that, following submission of petitioner's 1984 application, DEC timely notified petitioner that its application was incomplete and would remain so until it furnished requested information and the completion of SEQRA review by the lead agency. As previously discussed, the significant planned expansion of mining fully justified the request for additional information and further SEQRA review. It is now established law that until those events took place, any demand for a decision, such as petitioner made here in January and March 1987, was premature and ineffectual to bring into operation the automatic approval provisions of ECL 70-0109 (3) (b) *(see, Matter of Seaboard Contr. & Material v Department of Envtl. Conservation,* 132 AD2d 105, 109; *Tayntor v New York State Dept. of Envtl. Conservation,* 130 AD2d 571, 572-573). The case of *Matter of Atlantic Cement Co. v Williams (supra)* is distinguishable since in that case, DEC had failed to serve timely notice of incompleteness and, hence, the application was deemed complete before DEC sought SEQRA information which was not merely supplemental *(supra,* at 88, 90-91).

Moreover, there was another regulatory basis upon which DEC could subject petitioner's 1984 application to full environmental review. On that application (and the later, revised application submitted), petitioner quite properly and accurately designated it as an application "with *amendment"* (emphasis supplied), in view of the significant expansion of the project sought by petitioner. Under the regulations, such an amendment application is subject to the same requirements as a completed application for a new permit (6 NYCRR 421.4 [c]). That includes, where appropriate, the filing of an environmental impact statement (6 NYCRR 421.1 [c] [5]), the furnishing of which constitutes the thrust of petitioner's challenge here. Although the regulations require DEC to give written notice if it deems a proposed change in a permit to be sufficiently significant to require an amendment, this was unnecessary here, since petitioner itself expressly characterized the application as one for an amendment.

We have considered petitioner's remaining points and find them equally without merit. Accordingly, the dismissal of the petition should be affirmed.

YESAWICH, JR., J. (dissenting). I disagree with the majority's assessment that DEC's Life of Mine Review Policy is not a

rule or regulation within the constitutional filing requirement *(see,* NY Const, art IV, § 8). The so-called policy, promulgated by an internal memorandum, states that it *"shall* be implemented immediately for *all* permit applications" (emphasis supplied). Continuing in a prescriptive vein, it dictates that currently permitted mining operators who apply for a one-year permit (the only other option, excepting special circumstances, is a three-year permit) *"will be required* to submit a mined land use plan and *will be subjected* to a comprehensive [SEQRA] determination of significance made on the life of the mining operation" (emphasis supplied) the year following implementation of the policy. Currently permitted mine operators who apply for a three-year permit and new applicants *"shall be subjected* to environmental assessment and review pursuant to [SEQRA] for a period of time that covers the life of the mine from April 1, 1975 until reclamation has been completed, if such an assessment has not been made in the past" (emphasis supplied).

Regardless of how it is labeled, the term "rule or regulation" as employed in the filing requirement "embraces any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future" *(People v Cull,* 10 NY2d 123, 126). The Life of Mine Review Policy falls squarely within this definition and outside of any recognized exception *(see,* NY Const, art IV, § 8; *see also,* State Administrative Procedure Act § 102 [2] [b] [i]), and directly affects " 'that segment of the "general public" over which [the administrative agency] exercises direct authority' " *(Matter of Krauskopf v Perales,* 139 AD2d 147, 151, quoting *Matter of Connell v Regan,* 114 AD2d 273, 276) in that it mandates what information a mine operator must supply to even have its permit application considered. In addition, as noted in the memorandum itself, the expanded inquiry results in subjecting mine operators such as petitioner to a more extensive SEQRA review than previously required. What DEC has done is to prescribe a fixed general procedure which it applies without regard to other facts and circumstances, the clear indicia of a rule or regulation *(see, Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951; State Administrative Procedure Act § 102 [2] [a]).

The majority erects too narrow a standard when it suggests that only rules which *dictate* the result of administrative

review need be filed. In this respect it bears noting that courts have been admonished not to strive to read exceptions into the filing requirement to permit agencies to avoid the necessity for complying by the simple device of labeling what is essentially a rule, a statement of policy or the like *(People v Cull, supra,* at 129). Every rule as dispositive as the majority envisions, i.e., which foredooms the application, most assuredly must be filed *(see, e.g., Matter of Sturman v Ingraham,* 52 AD2d 882, 885), but not all rules coming within the *People v Cull (supra)* definition in and of themselves determine the result of an administrative decision *(see, e.g., Matter of Callanan Indus. v White,* 118 AD2d 167, 171, *lv denied* 69 NY2d 601). It is the absence of discretion which distinguishes a rule which must be filed from one which need not *(compare, Matter of Tenenbaum v Axelrod,* 132 AD2d 37, 39, *appeal dismissed* 71 NY2d 950, *with Matter of Hudson Val. Nursing Center v Axelrod,* 130 AD2d 862, 866; *see also, Matter of Williams v Smith,* 72 NY2d 939). On its face there is no room for discretion in DEC's application of its all-encompassing Life of Mine Review Policy; it is precisely this type of regulation which should be filed in a central place to give notice to that portion of the public whose interests are affected thereby *(see, Matter of Jones v Smith,* 64 NY2d 1003, 1006).

Even accepting the majority's narrow view of the filing requirement, the Life of Mine Review Policy is as determinative as any procedure can be. Failure to satisfy the apparently onerous information requirement forecloses issuance of a mining permit, and compliance, at a minimum, inevitably necessitates a delay in acquiring the permit.

I do not question the wisdom of the Life of Mine Review Policy, but if a procedure with such obvious and broad-ranging consequences need not be filed then NY Constitution, article IV, § 8 has been effectively gutted and the public need be put on notice of only a small fraction of administrative legislation. A constitutional provision should not succumb to a regulation, however salutary it may be. Because DEC did not provide the constitutionally required notice before implementing the Life of Mine Review Policy *(see,* NY Const, art IV, § 8; *see also,* State Administrative Procedure Act § 202; ECL 23-2721 [2]), the policy should not be binding upon petitioner, and, accordingly, I vote to reverse the judgment and grant the petition to

the extent of requiring DEC to reconsider petitioner's application without resort to the Life of Mine Review Policy.

MAHONEY, P. J., CASEY and MERCURE, JJ., concur with LEVINE, J.; YESAWICH, JR., J., dissents and votes to reverse in an opinion.

Judgment affirmed, with costs to respondents.