In the Matter of UNIMAX CORPORATION, Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents.

Third Department, March 28, 1991

### APPEARANCES OF COUNSEL

*Paul, Weiss, Rifkind, Wharton & Garrison (Leslie Gordon Fagen* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Denise A. Hartman* and *Nancy A. Spiegel* of counsel), for respondents.

### OPINION OF THE COURT

MERCURE, J.

By this proceeding, petitioner challenges a determination of respondent Tax Appeals Tribunal assessing franchise tax deficiencies for the tax years 1975 through 1979, contending primarily that applicable audit guidelines of the Department of Taxation and Finance (hereinafter the Department) are irrational. It is our view that petitioner has not met its burden of proving that respondents' determination is erroneous *(see,* Tax Law § 689 [e]; *Matter of Servair, Inc. v New York State Tax Commn.,* 132 AD2d 737, 738; *Matter of Delia v Chu,* 106 AD2d 815, 816). We accordingly confirm.

In this State, a corporation may exclude from its net income subject to franchise tax *(see,* Tax Law § 209 [1]) all "income, gains and losses from subsidiary capital" (Tax Law § 208 [9] [a] [1]). As under Federal law, the corporation may also deduct interest costs associated with loans from third parties *(see,* Internal Revenue Code [26 USC] § 163 [a]). However, where borrowed money is invested in the capital of a subsidiary, a

double benefit would result from the parent's deduction of interest paid on the loan and concurrent exclusion of income derived from the investment *(see, Matter of Woolworth Co. v State Tax Commn.,* 126 AD2d 876, 877, *affd* 71 NY2d 907). Therefore, the parent corporation is not permitted to exclude "in the discretion of the tax commission, any amount of interest directly or indirectly * * * attributable * * * to subsidiary capital[*] or to income, gains or losses from subsidiary capital" (Tax Law § 208 [9] [b] [6]).

Where borrowed funds can be directly traced to investment in a specific asset of a subsidiary (direct attribution), determination of the Tax Law § 208 (9) (b) (6) exclusion causes no difficulty. However, when direct attribution cannot be accomplished, the challenged Department guidelines permit indirect attribution of interest expense through the following asset-ratio formula, based upon the rationale that each asset held by a corporation shares the cost of borrowings in proportion to its value.

$$\frac{\text{Investment in Subsidiaries}}{\text{Total Assets}} \times \begin{array}{c}\text{Gross}\\\text{Interest}\\\text{Expense}\end{array} = \begin{array}{c}\text{Interest indirectly}\\\text{attributable to}\\\text{subsidiary capital}\end{array}$$

Although petitioner has no objection to the "disallowance fraction" employed in the formula, it disagrees with the method employed by the Department in calculating the numerator of the fraction, "investment in subsidiaries", defined in Department audit guidelines as "the average current cost of investments in the stock of the subsidiary, plus average paid-in capital and the average of any loans and advances * * * as defined in [Tax Law § 208 (4)]". The guidelines provide that, while loans and advances to the parent by one of its subsidiaries may be offset against loans and advances to such subsidiary, (1) loans and advances from a subsidiary may not reduce loans and advances from the parent to an amount lower than zero, and (2) loans and advances to the parent may not be offset against capital stock or against loans and advances to any other subsidiary.

Petitioner's stated objection to the guidelines is that the prohibition against netting loans and advances *to* the parent

---

[*] Subsidiary capital is defined in Tax Law § 208 (4) and 20 NYCRR 3-6.3 as the total of (1) the investment of the parent corporation in shares of stock of its subsidiaries, and (2) the amount of indebtedness owed to the parent corporation by its subsidiaries, on which interest is not claimed and deducted by the subsidiary for purposes of the tax imposed by Tax Law article 9-A.

from all subsidiaries against loans and advances *from* the parent to all subsidiaries is irrational and serves only to maximize tax liability. However, its analysis employs a significantly different approach. What petitioner really argues is that in a tax year when the total of loans and advances from subsidiaries "upstream" to the parent exceeds the total of loans and advances "downstream" from the parent to the subsidiaries, interest on third-party loans will be fully deductible because loan proceeds are demonstrably not flowing to the subsidiaries. In our view, this analysis is contrary to the express provision of Tax Law § 208 (9) (b) (6) and the regulations promulgated thereunder.

First, petitioner's argument completely ignores the distinction between direct and indirect attribution of interest expense to subsidiary capital. While recognizing that it cannot isolate the assets purchased with the loan proceeds, thereby requiring indirect attribution, petitioner disregards the Department's disallowance fraction and instead creates a third, hybrid, category of attribution, with the inquiry being where the loan proceeds did *not* go. This is clearly impermissible. Similarly, while giving lip service to the prohibition against deducting third-party interest attributable to investment in stock or paid-in capital of a subsidiary, petitioner entirely ignores the existence of these assets in its analysis, focusing solely on loans and advances. Even if petitioner were permitted to net loans and advances as it desires and reduce the aggregate of loans and advances to subsidiaries to zero, the entire value of petitioner's stock and paid-in capital in subsidiaries would be the numerator of the disallowance fraction, requiring some attribution of interest expense to subsidiary capital in any event. In fact, accepting petitioner's contention that it is a holding company, acting merely as a "clearinghouse" for its subsidiaries, it is likely that subsidiary capital represents substantially all of its assets and that the disallowance could approach 100%.

In an apparent effort to distract attention from the fact that its analysis is falsely predicated upon the nonexistence of stock and paid-in capital in subsidiaries, petitioner has adopted a "loan" rather than "asset" analysis. For example, petitioner incorrectly states that the legislative purpose in enacting Tax Law § 208 (9) (b) (6) was to avoid the windfall which resulted when a corporation borrowed money from a third party and turned around and obtained tax-free income by lending the money to its subsidiaries *(compare, Matter of*

*Woolworth Co. v State Tax Commn.,* 126 AD2d 876, 877, *supra).* Obviously, the windfall would result from investment of borrowed funds in any subsidiary capital, whether it takes the form of stock, paid-in capital or loans and advances *(see, supra).* Similarly, the hypothetical examples, which petitioner submits in an effort to show the aberrant results reached through application of the Department guidelines, purposely distort the results by presuming that loans to subsidiaries represent substantially all of the assets of the corporation.

The following example, far closer to corporate reality, points out the fallacy of petitioner's analysis. In 1990, a corporation with $80 million in assets and no investment in subsidiaries borrows $20 million, payable over a period of 20 years, and commingles the loan proceeds with other cash assets of the corporation. Later that year, the corporation purchases 100% of the stock of two other corporations for $20 million. Although, in 1990, a sum equal to the full amount of third-party loans was invested in subsidiaries, through application of the disallowance fraction only 20% (investment in subsidiaries divided by total assets) of the interest expense for that year will be disallowed. Continuing the example, assume that total interest paid on the loan was $2 million in 1991, which the parent corporation borrowed from the subsidiaries. Under petitioner's analysis, focusing only on the flow of funds and ignoring assets, because the parent was a "net borrower" from its subsidiaries in 1991, all of the interest is deductible because no part of the loan proceeds flowed to the subsidiaries in that year. In reality, all other things being equal, application of the formula again results in disallowance of 20% of the interest expense, based upon the proportion of corporate funds invested in subsidiaries.

In sharp contrast to the analysis employed here, the dissenters have focused exclusively on petitioner's stated objection and overlooked the essential ground for its challenge to the deficiency assessment. In its petition to this court, under the heading, "Netting of Advances to and from Unimax's Subsidiaries", petitioner's true position is most succinctly stated in the following terms:

"20. Under [Tax Law § 208 (9) (b) (6)], Unimax may not deduct * * * interest paid to third parties only if it can be shown that the principal amounts of these borrowings are attributable to investments in a subsidiary corporation.

"21. Because Unimax was a net *borrower* with respect to its

subsidiaries treated collectively, none of Unimax's third-party borrowings could be described as investments in these subsidiaries. The proper application of [Tax Law § 208 (9) (b) (6)] requires that the Commissioner net funds advanced to and from all subsidiaries before determining whether unrelated third-party loans should be characterized as investments in subsidiary capital" (emphasis in original).

In the portion of the petition denominated "Unimax's Injury", petitioner asserts, as it did in the administrative proceedings, that it is entitled to deduct the *entire amount* of interest paid on funds borrowed from unrelated third parties. Because zero attribution of interest can be accomplished only by reducing the numerator of the disallowance fraction to zero, we cannot accept petitioner's stated concession that it cannot offset its loans and advances to subsidiaries against its capital investment in subsidiaries. Under the circumstances, we are of the opinion that it is the dissenters who have misperceived the basis for this proceeding.

In sum, petitioner's analysis, focusing only on annual loans to and from subsidiaries, ignoring the taxpayer's over-all investment in subsidiary capital, and contrived for the sole purpose of taking advantage of its unique status as a clearinghouse for subsidiary funds, has little or no relationship to corporate reality. Its arguments provide no basis for annulling respondents' attribution of petitioner's interest expenses to its holding of subsidiary capital *(see, Matter of Woolworth Co. v State Tax Commn., supra,* at 879; *see also, Matter of Levin v Gallman,* 42 NY2d 32, 34).

■ ■ Petitioner's remaining contentions do not require extended discussion. First, we are of the view that there is substantial evidence to support respondents' valuation of petitioner's interest in one of its subsidiaries, Barry's Jewelers, Inc. Given that petitioner was a party to the stock purchase agreement, agreed to the purchase price of Barry's Jewelers and guaranteed payment of the purchase price by Barry's Purchasing Corporation, another of its wholly owned subsidiaries, there is adequate factual support for respondents' determination. Finally, we reject the contention that the Department's audit guidelines constitute a rule or regulation requiring formal promulgation. The guidelines are not, by their own terms, solely determinative of an audit and, thus, do not constitute "a fixed, general principle to be applied * * * without regard to other facts and circumstances relevant to

the regulatory scheme of the statute it administers" *(Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951; *see, Matter of Guptill Holding Corp. v Williams,* 140 AD2d 12, 18, *appeal dismissed, lv denied* 73 NY2d 820).

YESAWICH, JR., J. (dissenting). We respectfully dissent.

The majority finds petitioner's netting proposal untenable because they believe that this procedure ignores the taxpayer's stock investment in subsidiary capital by focusing on annual loans to and from subsidiaries only. The majority then goes on to imply that if a corporation is permitted to net loans and advances from all of its subsidiaries, the amount of its investment in subsidiary capital will be directly affected. This analysis, which focuses entirely on the interaction between the two disallowance fraction numerator components,[1] misperceives the basis for this proceeding. While it is indeed true that petitioner argued before respondent Tax Appeals Tribunal that it should be permitted to offset its loans and advances to subsidiaries against its cost of stock in its subsidiaries (the zero limitation) *(cf.,* 20 NYCRR 3-6.4), this argument was abandoned in this proceeding. And rightly so, for the zero limitation on the amount of the parent's indebtedness is consistent with the statutory definition of subsidiary capital and furthers the statutory goal of preventing double recovery. Interest attributable to the parent's cost of its stock investment in its subsidiaries is statutorily defined as a separate and distinct component from subsidiary indebtedness (Tax Law § 208 [4] [a]) and is similarly not deductible (Tax Law § 208 [9] [b] [6]). Petitioner does not claim otherwise. We have no quarrel with the majority's position to the extent that it finds that the parent's cost of stock in its subsidiaries cannot be ignored when determining the taxpayer's interest expense indirectly attributable to subsidiary capital.

The argument presented in this proceeding, however, is directed entirely to the second figure in the numerator of the disallowance fraction, namely, the parent's loans to subsidiary. Petitioner urges that it should be permitted to aggregate advances made to all of its subsidiaries against loans made by all of its subsidiaries to it. Although nothing in the Tax Law requires that interest indirectly attributable to each subsidiary be calculated separately, the audit guidelines do not

---

1. The numerator components are "Cost of stock in subsidiary + loans to subsidiary."

permit a parent company to net these loans and advances. Relevantly, the Tax Law explicitly defines subsidiary capital as "investments in the stock of subsidiar*ies* and any indebtedness from subsidiar*ies*" (Tax Law § 208 [4] [a] [emphasis supplied]). That the Legislature utilized the plural form leads one to believe that petitioner's aggregation approach is what was intended.

Although respondents argue that it is disingenuous to suppose that none of the subsidiaries benefited from petitioner's outside loans merely because petitioner borrowed more money from its subsidiaries overall, respondents never identify any tax advantage petitioner enjoyed by netting subsidiary loans and advances. Moreover, the majority, without explanation, concludes that netting affects the parent's cost of stock in its subsidiaries.[2] This is simply not so; the two components of the numerator are added together; thus, so long as the second figure (subsidiary loans) cannot be less than zero, the first figure (cost of subsidiary stock) remains unaffected.

Analysis of the majority's example discloses their misapprehension of petitioner's argument. After applying the disallowance fraction to their identified fact pattern, they conclude that 20% of the interest expense, which represents the proportion of the parent's investment in its subsidiaries, would be disallowed. Contrary to the majority's suggestion, netting loans and advances ensures the exact same result. It is the zero limitation which prevents the parent from deducting any of the money it borrowed from its subsidiaries from its investment in its subsidiaries' stock.

Significantly, the majority fails to explain why the Department of Taxation and Finance may tax this parent corporation differently from one that, in addition, transfers interest-free money from one of its subsidiaries to another. Calculating each subsidiary's loans and advances separately disparately affects corporations which have identical subsidiary stock investments and third-party borrowing. For example,[3] assume a parent corporation, which owns $1,000 in equity contribution from its shareholders, borrows $1,000 from a bank and

---

2. Parenthetically, both arguments fail to appreciate the reality that if a parent borrows funds from one or more of its subsidiaries, its need to borrow from outside sources is reduced, but the amount of its investment in its subsidiaries' stock remains unchanged.

3. Because the amount of the parent's investment in the stock of its subsidiaries has absolutely no effect on the amount of its loans and advances to subsidiaries, we ignore this figure for these examples.

then lends $1,000 to subsidiary A. Both parties would find the disallowance fraction to be one half: the net $1,000 investment in subsidiary A divided by the parent's total assets of $2,000. If another subsidiary, B, advances $6,000 of its own equity to the parent (interest free), and the parent immediately lends this amount to subsidiary A (also interest free), according to the Department's computation the disallowance fraction now would be seven eighths: net investment in subsidiaries $7,000 (the original $1,000 plus the additional $6,000 loaned to subsidiary A) divided by the parent's total assets of $8,000 (the $2,000 originally owned and borrowed plus the $6,000 advanced by subsidiary B).

Although the maximum possible amount from outside funding the parent could have invested in subsidiary A never changed, application of the Department's guideline netting prohibition suggests that it did. Petitioner's approach would ignore the subsidiary transfer, which indisputably generated no interest income for the parent, and tax it identically in both situations. Moreover, if the subsidiaries had simply bypassed the parent corporation altogether and transferred the funds directly between themselves, respondents' computation of the parent's includable interest expense would inexplicably change, while under petitioner's computation it would remain unchanged. In each of these examples, the parent company's interest income from subsidiary lending and interest payments on outside borrowing remains unchanged (as well as its investment in its subsidiaries); yet, applying the netting prohibition, the parent's tax obligation unaccountably differs significantly.

To permit the Department to attribute a greater percentage of a parent's outside borrowing to its subsidiary investment because interest-free intersubsidiary transfers occurred is not only illogical, but, more importantly, it in no way furthers the statutory objective of preventing double tax recovery. Therefore, to the extent that the Department's deficiency assessments failed to offset all of petitioner's subsidiary lending with all of its subsidiary borrowing, it should be vacated. In short, petitioner should be permitted to net loans and interest free advances made by and among it and its subsidiaries.

Accordingly, we would modify the determination and remit the matter to the Tax Appeals Tribunal for further proceedings not inconsistent with the views expressed herein.

CASEY, J. P., and LEVINE, J., concur with MERCURE, J.;

MIKOLL and YESAWICH, JR., JJ., dissent and vote to modify in an opinion by YESAWICH, JR., J.

Determination confirmed, and petition dismissed, without costs.