OPINION OF THE COURT
Bellacosa, J.
This CPLR article 78 proceeding challenges a franchise tax deficiency assessment. Petitioner taxpayer, The Unimax Corporation (Unimax), contends that an audit guideline of the New York State Department of Taxation and Finance (Department) implementing Tax Law § 208 (9) (b) (6) is arbitrary and capricious. Unimax also argues that the guideline is a rule or regulation which was not formally promulgated in accordance with the requirements of the NY Constitution, article IV, § 8.
The tax statute is designed "to prevent a parent corporation from obtaining a double tax benefit by taking a deduction for interest payments on loans incurred for directly or indirectly financing investments in subsidiaries while at the same time the parent’s income derived from such investments is tax free” (Matter of Woolworth Co. v State Tax Commn., 126 AD2d 876, 877, affd on mem at App Div 71 NY2d 907). The implementing audit guideline allows a parent corporation to offset loans to a subsidiary by loans to the parent from that subsidiary, on a subsidiary-by-subsidiary basis, to an amount not less than zero. This is allowed as part of the calculation of the amount of third-party interest expense indirectly attributable to subsidiary capital. The guideline explicitly prohibits a parent corporation from aggregating all its loans to subsidiaries and offsetting them with aggregate loans from the subsidiaries to the parent — the "netting” approach urged by Uni-max.
We conclude that the limited subsidiary-by-subsidiary offset analysis in the guideline is not inconsistent with the statute, does not frustrate its purpose, and represents a rational implementation of the discretion explicitly reposed in the Department by Tax Law § 208 (9) (b) (6). We therefore affirm the judgment of the Appellate Division dismissing the petition and confirming the determination of the Tax Appeals *142 Tribunal, which sustained the Department’s franchise tax deficiency.
The State franchise tax scheme, and the methodology and audit guideline utilized by the Department to calculate the amount of corporate interest expense indirectly attributable to subsidiary capital, are thoroughly described in the opinion by Justice Mercure at the Appellate Division (165 AD2d 476, 477-478).
During its taxable years 1975 through 1979, Unimax borrowed sums of money — ranging between $13 and $22 million —from unrelated third parties. The arm’s length transactions generated sizeable interest expenses for Unimax. In the same period, Unimax also functioned as a loan "clearinghouse” for its manufacturing subsidiaries which, with one exception, it wholly owned. Attempting to equalize the subsidiaries’ capital, Unimax would "frequently” borrow interest-free money from its cash-rich subsidiaries and then make interest-free loans to its cash-needy subsidiaries. For four of the five taxable years in issue, Unimax was a "net borrower” in relation to its subsidiaries; that is, it borrowed more in the aggregate from them than it loaned back to all of them. For those five years, Unimax deducted the full amount of its third-party interest expenses from its "entire net income” for State franchise tax purposes. It apparently concluded that none of those interest expenses were either directly or indirectly attributable to its investments in its subsidiaries, and therefore did not have to be added back to "entire net income” under Tax Law § 208 (9) (b) (6).
The Department took a contrary view and, after an audit, assessed deficiencies. The Statements of Audit Adjustment accompanying the deficiency notices stated that interest expenses deemed to be indirectly attributable to subsidiary capital pursuant to Tax Law § 208 (9) (b) (6) had been added back to Unimax’s "entire net income” for the five years. Unimax petitioned for redetermination, emphasizing its "net borrower” status and the fact that the loans to its subsidiaries were interest free. Consequently, it urged, its third-party loan proceeds demonstrably did not flow through to its subsidiaries, and its third-party interest expenses were therefore not attributable to subsidiary capital and should not have been added back to "entire net income”.
At the redetermination hearing, Unimax argued that the Department’s audit guideline was arbitrary because it did not *143 allow Unimax to aggregate its transactions by offsetting loans it received from its subsidiaries against loans it made to its subsidiaries. The Administrative Law Judge agreed with Uni-max’s theory, noting that nothing in the Tax Law requires the subsidiary-by-subsidiary approach mandated by the Department guideline. The Administrative Law Judge concluded that "[fjunds borrowed by a parent corporation from one or more of its subsidiaries clearly reduce the need of the parent to borrow from outside sources. Failure to recognize this by limiting net advances from a subsidiary to a parent to 'zero’ is nothing but an arbitrary measure designed to reap the highest amount of tax possible.” The Department appealed that portion of the Administrative Law Judge’s decision. The three-Judge Tax Appeals Tribunal reversed the Administrative Law Judge and upheld the Department’s notices of deficiency, concluding that the Department’s "method of determining the interest expense indirectly attributable to subsidiary capital is a proper exercise of the discretionary authority vested in it by the Legislature in section 208 (9) (b) (6)” and "promote[s] [the] underlying purpose” of the statute.
The next move was Unimax’s article 78 proceeding in the Appellate Division, Third Department, pursuant to Tax Law § 1090. Its petition claimed that "in computing its 'entire net income’, [it] was entitled to deduct the entire amount of interest paid on funds borrowed from unrelated third parties” (emphasis added). However, the prayer for relief and Uni-max’s submissions and argument to this Court unmistakably clarify that Unimax’s challenge to the deficiency determination is more circumspect. The precise relief Unimax seeks is a judgment declaring that the Department audit guideline, which expressly prohibits aggregate offsets, is arbitrary and capricious. In consequence, it asks that the Department be directed to net the advances to Unimax from its subsidiaries against the advances Unimax made to other subsidiaries, in calculating the indirect attribution percentage.
The Appellate Division confirmed the determination of the Tax Appeals Tribunal, with two Justices dissenting. The majority concluded that Unimax’s aggregate, netting-of-loans theory was contrary to Tax Law § 208 (9) (b) (6) and its accompanying regulations, and rejected Unimax’s argument that the Department’s audit guideline was not promulgated in accordance with the requirements of the NY Constitution, article IV, § 8 governing rules and regulations. An appeal as of right to this Court followed.
*144 At the outset, we recognize that the parameters of judicial review of the Department’s audit guideline are narrow. No one questions the authority of the Department to issue appropriate implementing guidelines. The language of Tax Law § 208 (9) (b) (6) offers a flexible regime: "Entire net income shall be determined without the exclusion, deduction or credit of: * * * in the discretion of the tax commission, any amount of interest * * * and any other amount directly or indirectly attributable as a carrying charge or otherwise to subsidiary capital or to income, gains or losses from subsidiary capital.” Thus, unless the statute requires an aggregate offset of loans from a parent corporation to its subsidiaries with loans from the subsidiaries to the parent when calculating the interest expense indirectly attributable to subsidiary capital, the choice of the allowable method of calculation is reposed in the Department. The Legislature did not require aggregation and explicitly granted the Department the authority to determine the method of calculation. The Department’s methodology is thus entitled to deference, provided it is not irrational or unreasonable, and does not contravene or impede the specific legislative intent of the governing statute (see, Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal, 75 NY2d 206, 213, quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459; Matter of Colt Indus. v New York City Dept. of Fin., 66 NY2d 466, 470-471; Matter of Great Lakes-Dunbar-Rochester v State Tax Commn., 65 NY2d 339, 343).
Deference is warranted even if a "fairer” methodology, i.e., one that reduces the amount of interest expense disallowed, exists and could have been adopted. As we have recognized:
"[I]t seldom suffices, and is often immaterial, in the resolution of tax controversies to demonstrate that in application a particular statute or regulation works even a flagrant unevenness. (Cf. Matter of Grace v New York State Tax Comm., 37 NY2d 193.) That a 'fairer’ taxing formula might have been adopted is of no moment. Indeed, in the application of tax statutes, unlike many other statutes, it cannot be assumed that when the Legislature designed the particular statute it had either a specific or even a general desire to achieve a fair or balanced formula. The objective may well have been the production or allocation of optimum revenue, and the particulars of the statute may *145 have been responsive to that objective rather than to any other.” (Matter of Long Is. Light. Co. v State Tax Commn., 45 NY2d 529, 535-536.)
Thus, the assertion of the Administrative Law Judge heavily relied upon by the dissenters that the audit guideline at issue here is " 'designed to reap the highest amount of tax possible’ ” (dissenting opn, at 148) and "serves only to maximize tax liability” (dissenting opn, at 150) does not affect our analysis.
The Department’s audit guideline, which expressly limits offsets to a subsidiary-by-subsidiary basis, plainly does not contravene the language of Tax Law § 208 (9) (b) (6). That section, as noted, requires that interest expenses from third-party loans which are either directly or indirectly attributable to subsidiary capital must be added back to the corporation’s "entire net income” figure. The thrust of the statute is to recapture taxable income and bar inappropriate deductions. "Subsidiary capital” is defined, in Tax Law § 208 (4) (a) and the accompanying regulations (20 NYCRR 3-6.3 [a]), as the corporate taxpayer’s investment in shares of its subsidiaries’ stock and the amount of indebtedness owed to the taxpayer from its subsidiaries. On its face, the statute does not require even the limited offset allowed by the guideline, and surely does not authorize, much less require, aggregate netting of parent-to-subsidiaries-to-parent loans. Thus, rather than "arbitrarily inflating the total of the taxpayer’s investments in its subsidiaries” (dissenting opn, at 150 [emphasis added]), the limited offset allowed by the guideline reduces the "investment in subsidiaries” figure below that required by statute. In sum, the statutory language fails to support Unimax’s claim that the only correct application of Tax Law § 208 (9) (b) (6) requires recognition of an aggregate net offset approach.
The Department’s subsidiary-by-subsidiary approach, moreover, does not contravene the legislative objective of § 208 (9) (b) (6): "to prevent a parent corporation from obtaining a double tax benefit by taking a deduction for interest payments on loans incurred for directly or indirectly financing investments in subsidiaries while at the same time the parent’s income derived from such investments is tax free”. (Matter of Woolworth Co. v State Tax Commn., 126 AD2d 876, 877, affd on mem at App Div 71 NY2d 907, supra [emphasis added].) Unimax has not carried its burden of demonstrating how the audit guideline, which allows only a limited offset on a subsid *146 iary-by-subsidiary basis, somehow frustrates or violates the statutory prohibition on a corporate taxpayer retaining a double tax benefit. On the contrary, the aggregate netting rule which Unimax asks us to adopt would permit corporate taxpayers, by a variety of accounting artifices, to reduce their indirect attribution percentages and retain higher levels of interest expense deduction, in violation of the statute and its over-all purpose. Even assuming, as the dissenters contend, that Unimax’s aggregate netting approach "completely fulfills” the legislative purposes (dissenting opn, at 150), the Legislature vested the Department with the discretion to choose between alternative means of calculating the indirect attribution percentage. That choice, as we have previously noted, may not be usurped by the courts in the name of fairness.
The facts that Unimax was a net borrower in relation to its subsidiaries taken in the aggregate, and that Unimax’s loans to its subsidiaries were interest-free, fail to "indisputably” establish, as Unimax claims, that third-party loans to Unimax in the current or prior taxable years did not flow to its subsidiaries and that indirect attribution of third-party interest pursuant to the Department guideline was therefore irrational or arbitrary. While Unimax may not have received a full, double tax windfall in the form of tax-free interest on its loans to subsidiaries, the purpose of the statute is to prevent windfalls resulting from any "income derived from such investments [in subsidiaries]”, whether received as interest on loans or, for example, dividend income (Matter of Woolworth Co. v State Tax Commn., 126 AD2d 876, 877, affd on mem at App Div 71 NY2d 907, supra). Moreover, the absence of a direct route from Unimax’s third-party loan proceeds to its subsidiaries does not affect the determination whether those proceeds were used to indirectly finance investments in any one of the subsidiaries and to generate tax-free income to the parent.
No doubt due to the fact that many loan proceeds and transactions cannot be directly or easily traced to subsidiary capital, the Legislature authorized the Department to estimate the amount of indirectly attributable interest expense to be deducted or disallowed. That measurement is necessarily imprecise. The formula adopted by the Department measures the amount of interest expense deemed indirectly attributable to subsidiary capital by looking to the manner in which the corporation allocated its assets; namely, its investments in *147 subsidiaries compared to its total assets. Unimax does not question the validity of this sensible and authorized quotient or argue that it is irrational. Rather, its challenge focuses, as do the dissenters in their hypothetical (dissenting opn, at 150), on a single element of the formula: the calculation of the corporation’s loans and advances. However, this narrow focus ignores the interplay between the loan element and various other elements of the formula, including investments in subsidiary stock, paid-in capital and, most importantly, the calculation of total assets, as well as the interplay with other discretionary audit guidelines. Consideration of that interplay is critical to assessing the rationality of the limited offset allowed by the challenged guideline. We conclude that we have been presented with no basis for concluding that the guideline is arbitrary, capricious, irrational or without foundation in a realistic taxing and business context.
To be sure, Unimax’s subsidiaries could have advanced funds directly to each other rather than through their common parent, Unimax, resulting in a lower disallowance of Unimax’s interest expense deduction. For whatever reason, Unimax chose to structure its intersubsidiaries’ lending network in the manner in which it did, resulting ultimately in a higher disallowance. However, the applicable taxing statutes unambiguously state that "indebtedness from subsidiaries” (emphasis added) is a factor in the disallowance calculation under Tax Law § 208 (9) (b) (6) (Tax Law § 208 [4] [a]). The courts lack any reasonable basis to conclude now that Unimax had no reasonable notice of the tax consequences of the business lending risks and accounting practice approach it chose.
Finally, we have considered Unimax’s constitutional challenge to the Department’s promulgation of the audit guideline and conclude that the argument is without merit for the reasons stated in the opinion by Justice Mercure at the Appellate Division (165 AD2d 476, supra).
Accordingly, the judgment of the Appellate Division should be affirmed, with costs.