■ NEW YORK STATE ASSOCIATION OF NURSE ANESTHETISTS, Respondent, v ANTONIA C. NOVELLO, as Commissioner of Health, et al., Appellants. [753 NYS2d 615] —Spain, J. Appeal from an order of the Supreme Court (Malone, Jr., J.), entered December 5, 2001 in Albany County, which granted summary judgment to plaintiff and declared certain guidelines promulgated by defendants to be null and void.

In 1997, defendants created an ad hoc Committee on Quality Assurance in Office-based Surgery (hereinafter Committee) to

investigate and report a means of establishing a standard of care for surgeries performed in private offices. Defendants appointed the Committee in recognition of the fact that the rate of surgeries performed in private offices was increasing at unprecedented levels but they were not regulated, in contrast to surgeries performed in hospitals which are regulated by standards established under Public Health Law article 28. In 1999, the Committee issued "The Clinical Guidelines for Office-based Surgery" (hereinafter Guidelines) "[t]o ensure that the public is adequately protected when undergoing surgery/invasive procedures in private offices of health care practitioners." The Guidelines establish a comprehensive code of conduct with respect to office practices, including specifications regarding anesthesia, pre- and post-surgical evaluations, monitoring equipment, credentialing, informed consent and emergency protocols.

Plaintiff, a not-for-profit corporation which represents over 750 certified registered nurse anesthetists (hereinafter CRNAs) practicing in this state who assert that the guidelines will adversely impact their practice by essentially eliminating their ability to render services in private offices without direct supervision by an anesthesiologist, commenced this action seeking a declaration that the Guidelines are null and void. Defendants moved to dismiss. Supreme Court converted the motion to a motion for summary judgment and, searching the record, found that defendants lacked authority to issue the Guidelines. The court granted summary judgment to plaintiff and issued a permanent injunction preventing defendants from publishing, distributing or enforcing the Guidelines. Defendants appeal, and we affirm.

As a threshold matter, because we ultimately grant relief to plaintiff, it is necessary to determine whether plaintiff has standing to challenge the Guidelines (*see Matter of Hoston v New York State Dept. of Health*, 203 AD2d 826, 827, *lv denied* 84 NY2d 803). To establish standing, "an organizational plaintiff must demonstrate a harmful effect on at least one of its members; it must show that 'the interests it asserts are germane to its purposes so as to satisfy the court that it is an appropriate representative of those interests;' and it must establish that the case would not require the participation of individual members" (*Rudder v Pataki*, 93 NY2d 273, 278, quoting *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 775). Here, defendants challenged plaintiff's standing under the first prong of this test, asserting that plaintiff has failed to demonstrate that any of its members have standing as individuals to bring the instant action.

"To establish standing to challenge an administrative action, a [plaintiff] must show an injury in fact—an actual legal stake in the matter being adjudicated—and that the interest or injury asserted falls within the zone of interest to be protected by the statute or constitutional guarantee" (*Matter of Lasalle Ambulance v New York State Dept. of Health*, 245 AD2d 724, 724, *lv denied* 91 NY2d 810). Addressing first the "zone of interest" portion of the test (*see id.* at 724-725), we look to plaintiff to show "that the interest or injury asserted fall[s] within the zone of interests protected by *the statute invoked*" (*Society of Plastics Indus. v County of Suffolk, supra* at 773 [emphasis added]). For example, the individual plaintiff in *Society of Plastics Indus. v County of Suffolk* (*supra*)—a manufacturer of plastics—did not have standing to assert the protections of the State Environmental Quality Review Act because "[e]conomic injury is not by itself within [that Act's] zone of interests" (*id.* at 777). Here, defendants contend that plaintiff lacks standing because the alleged economic injuries of CNRAs do not fall within the scope of interest to be protected by the Guidelines, which were issued pursuant to the general authority of defendant Department of Health (hereinafter DOH) to promote the public health (*see* Public Health Law § 206 [1] [a]; § 225 [1]). This argument is flawed in that it misconstrues the test or misstates the nature of plaintiff's challenge. Plaintiff is not invoking the Guidelines or the Public Health Law to obtain the relief sought but, in contrast, is challenging the Guidelines as an illegal and irrational infringement of the rights of its members to pursue their professions, pursuant to Education Law §§ 6901 and 6902 and the Equal Protection and Due Process Clauses of the US and NY Constitutions. The proper inquiry plainly is not whether plaintiff's members are within the class protected by the Guidelines, but whether they are within the zone of interest protected by the sections of the Education Law and the constitutional provisions upon which they rely. As Education Law article 139 directly and specifically addresses the practice of professional nursing and the other provisions relied upon by plaintiff are constitutional guarantees of all citizens, plaintiff's members clearly fall within the class of individuals protected by those provisions.

We also find that plaintiff has sufficiently stated an injury in fact sustained by its members to confer standing (*see Matter of Lasalle Ambulance v New York State Dept. of Health, supra* at 724). The Guidelines require a supervising physician who is qualified to administer anesthesia to either perform or personally supervise many of the procedures involved in providing anesthetic care to patients in private offices. For example, the

Guidelines specifically require that a qualified surgeon or an anesthesiologist perform the preanesthetic evaluation and remain physically present during the entire perioperative period, functions that are often currently performed by CNRAs. Plaintiff contends that these requirements will prevent CNRAs from practicing in private offices because, as a general proposition, the physicians for whom CNRAs perform these functions are not themselves qualified to administer anesthesia. Consequently, plaintiff contends, office-based surgeons will be forced to hire anesthesiologists to perform these functions thereby limiting the ability of CNRAs to practice in private offices. We find this assumption reasonable and sufficient to demonstrate a likelihood of actual injury, and reject defendants' contention that the injury alleged is too speculative to confer standing (*see Community Serv. Socy. v Cuomo*, 167 AD2d 168, 171). Indeed, CNRAs clearly are "subject to and directly affected by" the Guidelines and thus unquestionably are the appropriate parties to bring this action (*Subcontractors Trade Assn. v Koch*, 62 NY2d 422, 426; *see Matter of New York State Nurses Assn. v Axelrod*, 152 AD2d 888, 890). We turn, therefore, to the merits of the action.

Defendants are authorized to regulate the administration of anesthesia in hospitals, as that term is defined by Public Health Law article 28 (*see* Public Health Law §§ 2800, 2801 [1]). In contrast, as defendants concede, they have no authority to regulate services provided in private physician offices. Although several bills designed to facilitate the regulation of office-based surgery have been introduced, to date the Legislature has failed to act in this regard. Defendants nevertheless contend that they have authority to issue the Guidelines because they are nonmandatory "recommendations" rather than regulations. The "Statement of Intent and Goals" of the Guidelines states, "[w]hile these guidelines are not statutorily based, they represent *uniform professional standards of care* and may help to clarify a practitioner's *obligations under law and regulation*" (emphasis added). In our view, on its face this assertion suggests that the Guidelines, however self-named or characterized, are regulations.

We find ample record evidence to support this conclusion. The term rule or regulation "embraces any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future. The label or name employed is not important" (*People v Cull*, 10 NY2d 123, 126 [citations omitted]; *see Matter of Alca Indus. v Delaney*, 92 NY2d 775, 778). Supreme Court found—a finding supported by

the record—that "defendants believed that their comprehensive code governing office-based surgeries would have to be followed by physicians because the methods of practicing medicine set forth in the Guidelines would become the standards to be applied in physician disciplinary proceedings and would be evidence of local community medical standards in medical malpractice actions." Indeed, at the meeting where defendant Public Health Council approved the Guidelines, a director of DOH opined that the Guidelines would be distributed to the State Board for Professional Medical Conduct and "indicate to physicians that this is the standard of practice in New York State." At a meeting of the Committee, its chair stated, "we are creating a standard of care here that will be referenced by a variety of other sources, including probably legal sources. So there would be reason to adhere to the guidelines, one would hope. Otherwise there would be no purpose in the exercise we've gone through for the last eight or nine months." Thus, the Guidelines were not promulgated as mere suggestions but, as a practical matter, were intended to dictate the conduct of professionals conducting surgery in private offices. Significantly, however, the Legislature has specifically prohibited defendant Commissioner of Health from promulgating any rules or regulations concerning the professional misconduct of physicians as defined by Education Law article 131-A (*see* Education Law § 6532). Given defendants' clear intention of creating a uniform standard of conduct, we find that the Guidelines create "a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers" (*Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 66 NY2d 948, 951) and, contrary to defendants' characterization, the Guidelines are specific enough to "dictate the result" of a proceeding (*Matter of Guptill Holding Corp. v Williams*, 140 AD2d 12, 18, *lv denied* 73 NY2d 820), rather than simply serving as a backdrop against which an agency could render determinations on a case by case basis (*see Boreali v Axelrod*, 71 NY2d 1, 13; *Matter of Connell v Regan*, 114 AD2d 273, 275; *cf. Matter of Teresian House Nursing Home Co. v Chassin*, 218 AD2d 250, 254; *Matter of Unimax Corp. v Tax Appeals Trib. of State of N.Y.*, 165 AD2d 476, 481-482, *affd* 79 NY2d 139).

In view of our conclusion that the Guidelines are regulations, we agree with Supreme Court that defendants impermissibly acted in the absence of legislative guidance and contrary to an express legislative mandate prohibiting such action (*see* Education Law § 6532). Accordingly, the Guidelines are illegal

and, thus, necessarily irrational (*see Kuppersmith v Dowling*, 93 NY2d 90, 96; *Matter of Bates v Toia*, 45 NY2d 460, 464).

Mercure, J.P., Crew III, Peters and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs. [*See* 189 Misc 2d 564.]