OPINION OF THE COURT
Bellacosa, J.
Petitioner, a licensed real estate broker, challenges an order of the respondent Secretary of State, dated September 6, 1977, *240 which interdicts real estate brokers and salespersons from soliciting for sale residential realty in eastern Bronx County. A related regulatory practice restricting the number of brokers permitted to operate in areas covered by the nonsolicitation order is also attacked. The lower courts upheld the authority of the Secretary of State to issue the order and to control the number of brokers in the area and declared the actions constitutional.
The Appellate Division order appealed as of right should be reversed because the Secretary of State’s power to regulate real estate brokers does not authorize the regulations under review. By deciding the case traditionally on the narrowest ground available, we need reach no other issue and do not reach the constitutional issue adjudicated by the lower courts as to whether this wholesale ban on solicitation is violative of the First Amendment (Central Hudson Gas & Elec. Corp. v Public Serv. Commn., 447 US 557).
The responsibility for licensing real estate brokers has been expressly delegated to the Secretary of State (Real Property Law § 441-a). The Secretary is also authorized to discipline any licensees who have demonstrated "untrustworthiness” (Real Property Law § 441-c) and is empowered to enact rules and regulations to effectuate this authority (Executive Law § 91) which, reasonably interpreted, authorizes her to set standards of conduct for the real estate industry and to promulgate regulations pertaining to the licensing and disciplining of real estate brokers. In 1969, the Legislature declared in Executive Law § 296 (3-b) that it shall be unlawful "for any real estate broker * * * to represent that a change has occurred or will or may occur in the composition [of a neighborhood or block] with respect to race, creed, color [or] national origin * * * and to represent, directly or indirectly, that this change will or may result in undesirable consequences * * * including but not limited to the lowering of property values, an increase in criminal or anti-social behavior, or a decline in the quality of schools or other facilities.”
To further this State policy of preserving stable and integrated communities and of avoiding churning and panic selling, the Secretary of State, acting expressly under both Real Property Law article 12-A and Executive Law § 91, promulgated a regulation which prohibited licensed real estate brokers from representing to homeowners that the value of their homes was decreasing due to an influx into the community of *241 people of a different race, color or creed (19 NYCRR 175.17 [a]). The antiblockbusting regulation was initially to be enforced by individualized cease and desist orders against brokers soliciting individual homeowners who had notified the Secretary that they did not desire to sell or lease their property (19 NYCRR 175.17 [b]).
In the summer of 1977, residents and community representatives in eastern Bronx County complained to the Department of State of excessive solicitation and aggressive activities by real estate brokers in the community, despite the use of cease and desist orders. Following a public hearing on the issue, the Secretary of State issued an order under challenge in this lawsuit, which states in pertinent part "that all real estate brokers and salespersons are hereby restricted and shall cease and desist from soliciting listings of residential properties for sale and for purchase in any manner,' including but not limited to solicitation by means of letters, postcards, telephone calls, door-to-door canvassing, window signs, billboards, advertisement by handbills or news publications except news publications of general circulations within the boundaries of Community Planning Board 9, 10, 11 and 12 of Bronx County. That all solicitation be and is hereby prohibited until further notice” (record on appeal, vol I, at 46).
In addition to issuing the nonsolicitation order, the Secretary of State promulgated a regulation, also at issue here, providing that: "No broker shall relocate his principal office or any branch office without prior approval of the department” (19 NYCRR 175.20 [d]).
In June 1984, petitioner Campagna, a licensed real estate broker who resides in The Bronx, closed her real estate office in Stormville, Dutchess County. Six months later, she notified the Department that she wished to relocate her office to her Bronx residence within the area of the nonsolicitation order. The Department conditionally acquiesced.
In March 1985, petitioner sought a declaratory ruling from the Department that the nonsolicitation order and license relocation restrictions should not be enforced against petitioner and other licensees similarly situated. The Department declined to rule and this litigation ensued.
Petitioner contends that the Secretary of State lacked the authority to issue the order, that the Secretary has no authority to approve or condition broker relocation and that, in any event, her right to free speech was violated. She also alleges *242 that the order unduly restricts her business activity, causing her economic hardship.
The Secretary of State defends, contending that it is within her expressly delegated authority to determine what conduct constitutes untrustworthiness and that she has determined that all broker-initiated contact in this specified area constitutes untrustworthiness. The Secretary also argues that the order is consistent with the legislatively declared policy to ban blockbusting and is a reasonable means to achieve that goal.
The Secretary claims she has authority to approve broker relocation under Real Property Law article 12-A generally and Real Property Law § 441-a (5) specifically, which provides in part: "Change of address. Notice in writing * * * shall be given the department * * * by a licensed real estate broker on his own behalf and on behalf of each salesman associated with him of any change in his or its principal business address.”
Before turning to the substance of our analysis, we note that we were previously confronted with a challenge to the scope and validity of a nonsolicitation order covering different geographic areas. In Matter of Hawley v Cuomo (46 NY2d 990), a 1976 nonsolicitation order encompassing all of Brooklyn and Queens was at issue, and we assumed without deciding that the Secretary had authority to issue the order. We nonetheless invalidated the order there as arbitrary and capricious, noting that "the facts before respondent failed to establish any rational basis for promulgation of an order so broad in geographic scope” (id., at 992).
Agencies, as creatures of the Legislature, act pursuant to specific grants of authority conferred by their creator. In discharging responsibilities, an agency is "clothed with those powers expressly conferred by its authorizing statute, as well as those required by necessary implication [citations omitted]. Where an agency has been endowed with broad power to regulate in the public interest, we have not hesitated to uphold reasonable acts on its part designed to further the regulatory scheme” (Matter of City of New York v State of New York Commn. on Cable Tel., 47 NY2d 89, 92). It is correspondingly axiomatic, however, that an administrative officer has no power to declare through administrative fiat that which was never contemplated or delegated by the Legislature. An agency cannot by its regulations effect its vision of societal policy choices (Matter of Consolidated Edison Co. v Department of Envtl. Conservation, 71 NY2d 186, 191-192; *243 Boreali v Axelrod, 71 NY2d 1, 9), and may adopt only rules and regulations which are in harmony with the statutory responsibilities it has been given to administer.
In Boreali v Axelrod (supra), for example, the Public Health Council was held for a number of reasons to have exceeded the boundaries of its lawfully delegated authority. A key feature of that case insofar as it bears on this case was that the Legislature had never articulated a policy regarding the public smoking controversy. In marked distinction in the instant case, the Legislature has condemned blockbusting, recognizing it as destructive, illegal and against the common good.
The question for us, however, is whether the nonsolicitation order in this case exceéded whatever authority the Secretary did have. We conclude that it did.
The Legislature has explicitly enumerated the types of solicitation it views as forbidden blockbusting activity. Brokers are not to represent "that a change has occurred or will or may occur in the composition [of the neighborhood] with respect to race, creed, color, national origin * * * [and] that this change will or may result in undesirable consequences” (Executive Law § 296 [3-b]).
The nonsolicitation order at issue leaps well beyond that legislative articulation and interdicts administratively all broker-initiated solicitation, not just the illegal solicitation as targeted by the Legislature. Thus, the Secretary has gone beyond administering the written law and has, under color of regulatory authority, actually rewritten and extended the law. The agency cannot make unlawful what the Legislature still has on the books as lawful.
Boord v O’Brien (277 App Div 253, affd without opn 302 NY 890) provides a compelling analogue. There, the New York City Council, addressing complaints that hotel runners were fraudulently inducing persons to patronize certain hotels, amended section 436-3.0 of the Administrative Code of the City of New York in 1947 to provide "that a law be enacted permitting only those men who already possess licenses to continue in the business and providing that no additional licenses be issued. * * * The [police] commissioner may make such rules, regulations and orders as he may deem necessary for licensing and conduct of hotel runners” (Local Laws, 1947, No. 39 of City of New York). The Police Commissioner resolved that only persons who had no hotel in mind could be *244 solicited. A licensed hotel runner balked, and the Appellate Division ruled as follows: "The city’s legislature chose to continue the business of hotel runner and created a licensing system to continue it under regulations intended to eliminate abuses. The mandate of the legislature was thus specific and defined. The commissioner could adopt regulations to effect the objects of the statute, but he could not substitute his own opinion of what was in the public interest and adopt regulations which would have the effect of eliminating the business and nullifying the statute. * * * Testing the regulations, therefore, by the standard of whether they implement the law, we find that the regulations cannot be sustained. The commissioner has gone beyond executing the law as written by the city legislature and undertaken to cut down the business of hotel runner below that permitted by law” (Boord v O’Brien, 277 App Div 253, 256-257 [Peck, P. J.], supra).
Significantly, the court noted that "the commissioner did not attempt to confine his regulations to preventing misrepresentations or limiting licensees to persons of good character, which were the stated objects of the code provisions, but attempted to curtail the legitimate activity of a hotel runner” (id., at 257). The court concluded that while elimination of the business itself may be necessary to end the abuses, that plenary goal was for the Legislature and not the Commissioner to determine (id., at 258). In the instant case, as in Boord (277 App Div 253, supra), the Legislature identified abuses in the real estate industry and enacted legislation designed to curtail them. If the only way to prevent blockbusting is to ban all broker solicitation in certain areas, that is a policy choice for the Legislature, not for the agency. That would, of course, have to pass constitutional muster, but would enjoy the threshold legislative presumption of constitutionality.
The means chosen by this agency to carry out its delegated task in this area are limited to its authority to regulate broker untrustworthiness flowing from unlawful discriminatory practice of blockbusting, only as the Legislature has defined it (see, Burlington Truck Lines v United States, 371 US 156). By promulgating the nonsolicitation order at issue, the Secretary exceeded her statutory mandate and sought to exercise a power she did not have.
Interestingly, the record offers no identified authority source for the particular and broad antidote selected by the Secretary *245 to counteract the poison of blockbusting. While the record establishes that the subject community was besieged by unlawful blockbusting activity and that the then existing remedy —cease and desist orders — was insufficient, there was no discussion on how to strengthen enforcement of that case-by-case mechanism. There is no evidence that enhanced disciplinary measures were considered that would punish only those who were individually engaging in or demonstrating an intent to engage in invidious blockbusting activity (compare, Administrative Code former §§ Cl-1.0 — Cl-9.0). Startlingly, no provision was made to require a periodic review of the neighborhood covered by the nonsolicitation order to assess whether the need for an otherwise permanent and blanket ban still existed (compare, Administrative Code § 8-204). A 12-year-old public hearing record cannot float as proof that certain neighborhoods, at one time plagued by blockbusters, justified such all-out interventive restrictions imposed in perpetuity.
Finally, the issue with respect to the relocation of licensees is answered conclusively by Council for Owner Occupied Hous. v Abrams (72 NY2d 553) and by Real Property Law § 441-a (5) as well. The statute requires that the Secretary of State receive only notification of relocation. Thus, the regulation (19 NYCRR 175.20 [d]), which establishes preapproval to the licensee’s relocation and which in this case imposed conditions, exceeds the notification function of the statute and is invalid.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition should be granted declaring the regulations at issue invalid.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Hancock, Jr., concur; Judge Titone taking no part.
Order reversed, etc.