OPINION OF THE COURT
Bernard J. Malone, Jr., J.
The plaintiff is awarded summary judgment declaring that the Clinical Guidelines for Office-Based Surgery (Guidelines) promulgated by the defendants and published on the New York State Department of Health (DOH) Web site during December of 2000 are null and void and of no force and effect. The court finds that defendants’ actions in enacting the Guidelines were ultra vires, and the plaintiff is granted a permanent injunction prohibiting the defendants from publishing, distributing or enforcing the Guidelines.
The plaintiff is a not-for-profit corporation representing over 750 certified registered nurse anesthetists (CRNAs). Defendant No vello is the Commissioner of DOH, and the New York State Public Health Council (Council) is a 15-member subdivision of DOH which “shall, at the request of the commissioner, consider any matter relating to the preservation and improvement of public health, and may advise the commissioner thereon; and it may, from time to time, submit to the commissioner, any recommendations relating to the preservation and improvement of public health” (Public Health Law § 225 [1]). DOH has a mandate of generally overseeing the public health interests of the state (see, Public Health Law § 201), and Public Health Law § 2800 provides: “Hospital and related services including health-related service of the highest quality, efficiently provided and properly utilized at a reasonable cost, are of vital concern to the public health. In order to provide for the protection and promotion of the health of the inhabitants of the state, pursuant to section three of article seventeen of the constitution, the department of health shall have the central, comprehensive responsibility for the development and administration of the state’s policy with respect to hospital and related services, and all public and private institutions, whether state, county, municipal, incorporated or not incorporated, serving principally as facilities for the prevention, diagnosis or treatment of human disease, pain, injury, deformity or physical condition or for the rendering of health-related service shall be subject to the provisions of this article.”
Pursuant to Public Health Law § 2800, DOH has promulgated rules for the administering of anesthesia in article 28 fa *566 cilities, such as hospitals. The Legislature has specifically withheld from the defendants the authority to regulate the conduct of physicians in non-hospital based settings, and the defendants concede that office-based surgical practices are not subject to regulation by them. As a consequence, since CRNAs are an available, qualified resource and since the services of CRNAs are much less expensive than the services of anesthesiologists, many office-based surgeries are conducted with CRNAs administering the anesthesia. Despite the fact that the defendants had no jurisdiction over the private practice of medicine outside of the article 28 context, they formed an ad hoc Committee on Quality of Assurance in Office-Based Surgery (Committee). One of the purposes of the Committee was to devise a way of regulating the administration of anesthesia in office-based surgeries regardless of the lack of statutory jurisdiction to do so. Consequently, the Committee requested a legal opinion from the General Counsel of DOH as to the statutory and regulatory authority over physician practices. The then General Counsel responded in a written memorandum dated May 11, 1998 (exhibit A of the affirmation of plaintiffs attorney dated Oct. 29, 2001) in which he stated:
“Under current law, there is no administrative agency or other entity with statutory authority over physician private practices, including office based-surgical practices. Physician professional conduct is regulated solely through disciplinary proceedings. Absent any such statutory authority, regulations governing the establishment and operation of physician office-based surgical practices cannot be promulgated. Guidelines, however, could be issued. Although such guidelines would not have the force of law, they could be useful as evidence of community standards of care in disciplinary proceedings.”
The memorandum further states:
“The department clearly has the statutory authority to regulate facilities which fall within the statutory definition of hospitals. This statutory authority in article 28 does not, however, extend * * * to physician private practices. Indeed, under applicable provisions of the EL (Education Law) and the PHL (Public Health Law), there is no authority pursuant to which the department, SED (State Education Department), the Board of Regents, the State Board for Medicine nor the Board may oversee physician private practice per se or promulgate regulations regarding physician private practices. While the Board of Regents and SED have authority to promulgate rules regarding the practice of most professions, physician practice *567 is specifically exempted from such authority. Moreover, the EL specifically states: ‘Neither the commissioner of education, the board of regents nor the commissioner of health may promulgate any rules or regulations concerning [Article 131-A]’. (Article 131-A is the section of the Education Law concerning professional disciplining of physicians, physician’s assistants and specialist’s assistants).”
The motion record before the court establishes that the defendants believed that their comprehensive code governing office-based surgeries would have to be followed by physicians because the methods of practicing medicine set forth in the Guidelines would become the standards to be applied in physician disciplinary proceedings[1] and would be evidence of local community medical standards in medical malpractice actions.[2] The motion record further establishes that repeated bills introduced before the Legislature to give the defendants the authority to become the standard setting agency with respect to the private practice of medicine in the office-based surgery area have never been enacted into law. The failure of such legislation to become law, coupled with the express language of Education Law § 6532, compels this court to conclude that the Legislature has not delegated any authority to the defendants to legally allow them to set the standards for physician conduct outside of article 28.
*568 In its complaint, plaintiff alleges the following causes of action: (1) the guidelines are null, void and of no force and effect since they are ultra vires as outside the jurisdiction of the defendants to promulgate; (2) the guidelines are null, void and of no force and effect since they are ultra vires in that they purport to limit the scope of practice of CRN As, which is a subject of regulation vested solely in the Department of Education; (3) the guidelines are arbitrary, capricious and irrational and are not based upon any evidence of medical need; (4) the guidelines constitute legislation and therefore are a usurpation of the power of the New York State Legislature; (5) the guidelines are null, void and of no force and effect since they were promulgated without compliance with the New York State Administrative Procedure Act and article IV, § 8 of the New York State Constitution; (6) the guidelines constitute a taking of property without due process of law and a denial of equal protection as guaranteed by the New York State and United States Constitutions.
In their answer, defendants assert the following affirmative defenses: (1) the court lacks subject matter jurisdiction; (2) the plaintiff lacks standing; (3) plaintiffs claims are not justiciable; and (4) plaintiff has failed to state a cause of action.
The defendants moved for an order pursuant to CPLR 3211 (a) (2) and (7) dismissing the complaint or, alternatively, converting this CPLR declaratory judgment action to a CPLR article 78 proceeding. In a decision and order dated October 12, 2001, this court accorded that dismissal motion summary judgment treatment.
Prior to reaching the merits of the action, the court will address the affirmative defenses. With respect to standing, the court will follow the approach of the Court of Appeals in the case of Matter of Roman Catholic Diocese v New York State Dept. of Health (66 NY2d 948), and assume, without deciding, that the plaintiff has standing and proceed to the merits. As to the remaining affirmative defenses, in the case of Boreali v Axelrod (71 NY2d 1), the Court of Appeals specifically affirmed the decision of Justice Hughes which converted an article 78 proceeding alleging that DOH, the Council and the Commissioner had acted ultra vires in enacting a comprehensive code banning smoking in some public places to a declaratory judgment action. By implication, in affirming the trial court, the Court of Appeals also determined that an action charging the defendants with enacting an ultra vires comprehensive code of conduct sets forth a justiciable claim, stated a cause of action, *569 and was within the subject matter jurisdiction of Supreme Court. Therefore, the plaintiff is awarded summary judgment dismissing the affirmative defenses set forth in the answer, and the defendants’ dismissal motion is denied.
With respect to the merits, the decisive issue is whether the defendants violated the separation of powers among the three branches of government, and acted ultra vires, when they promulgated a comprehensive code of conduct for the performance of office-based surgeries when the Legislature has passed a statute directing that the defendants had no authority to enact rules or regulations defining standards of physician care in the nonarticle 28 context. Put another way, can the defendants set public policy as to the standards of physician conduct in performing office-based surgeries simply by calling their comprehensive code of conduct “guidelines” rather than “rules” or “regulations”? The answer to that question requires a look at the separation of powers doctrine and the function of an administrative agency under that doctrine. Justice Hughes well described separation of powers in the Boreali case (supra) as follows: “the New York Constitution gives each branch of government specific functions, powers, and limitations. The Legislature has been given the law making and public policy setting function (N.Y. Const, art. III, § 1). ‘The public policy of this State where the Legislature acts is what the Legislature says it shall be’ (Rozell v. Rozell, 256 A.D. 61, 62, affd. 281 N.Y. 106). The executive branch is given the duty to execute, not create, the laws (N.Y. Const. art. IV, § 3). While there is no constitutional prohibition against the Legislature delegating its power, with reasonable safeguards and standards, to a commission or agency (City of Amsterdam v. Helsby, 37 N.Y.2d 19), a regulation must fail ‘if it contravenes the will of the Legislature as expressed in the statute’ (State Div. of Human Rights [Valdemarsen] v. Genesee Hosp., 50 N. Y.2d 113, 118). Regulations will be struck down when they conflict with State policy as set by the Legislature (Matter of Council for Owner Occupied Housing, Inc. v Abrams [125 AD2d 10 (3d Dept)]).” (1987 WL, at *2.)
The role of administrative agencies under the separation of powers doctrine was further explained by Judge Bellacosa in the case of Matter of Campagna v Shaffer (73 NY2d 237, 242-243) as follows: “Agencies, as creatures of the Legislature, act pursuant to specific grants of authority conferred by their creator. In discharging responsibilities, an agency is ‘clothed *570 with those powers expressly conferred by its authorizing statute, as well as those required by necessary implication [citations omitted]. Where an agency has been endowed with broad power to regulate in the public interest, we have not hesitated to uphold reasonable acts on its part designed to further the regulatory scheme’ (Matter of City of New York v State of New York Commn. on Cable Tel., 47 NY2d 89, 92). It is correspondingly axiomatic, however, that an administrative officer has no power to declare through administrative fiat that which was never contemplated or delegated by the Legislature. An agency cannot by its regulations eifect its vision of societal policy choices (Matter of Consolidated Edison Co. v Department of Envtl. Conservation, 71 NY2d 186, 191-192; Boreali v Axelrod, 71 NY2d 1, 9), and may adopt only rules and regulations which are in harmony with the statutory responsibilities it has been given to administer.”
In this court’s view, the case controlling the resolution of this action is the Court of Appeals decision in Boreali. In Boreali (at 6), the Court of Appeals ruled that the Commissioner, DOH and the Council acted ultra vires when they enacted a “comprehensive code” governing smoking. The Court of Appeals concluded that while the Legislature had given a broad delegation of powers to DOH, the Commissioner and the Council, because of four coalescing circumstances, the defendants exceeded the powers that were delegated to them. One of the primary circumstances that led the Court of Appeals to its holding was that the Legislature never articulated a policy regarding the public smoking controversy (Matter of New York State Health Facilities Assn. v Axelrod, 77 NY2d 340, 346). Here, this court need not go into coalescing factors under which a properly delegated power has been improperly used. Rather, the Legislature has clearly articulated its policy with respect to the authority of the Commissioner, the Council and DOH to enact a comprehensive code of physician conduct in office-based surgeries when it stated in Education Law § 6532 that the Commissioner could not promulgate any rule or regulation concerning professional misconduct by a physician. The Legislature reserved to itself the power to define such conduct (Education Law §§ 6530, 6531).
The defendants seek to distinguish Boreali upon the ground that they have labeled their comprehensive code of conduct as “Guidelines,” as opposed to rules or regulations. The separation of powers doctrine will not be evaded simply by the title, label or characterization ascribed by an administrative agency *571 to its pronouncements. Rather, the courts will look to the content of the pronouncements. Indeed, the Court of Appeals was prescient and foresaw the potential for the types of evasive activities challenged in this case. Judge Titone, renowned for his precision with words, did not hold that the defendants overstepped their authority in Boreali when they enacted a rule or regulation. Rather, he specifically chose broader language and stated that the defendants acted ultra vires when they enacted a “comprehensive code to govern” conduct in an area where they were not permitted to set policy (Boreali, supra, at 6). These defendants have made no argument that the Guidelines they enacted do not establish a comprehensive code of conduct for the performance of office-based surgeries. They merely contend that enforcement of their comprehensive code will be by a more roundabout manner than would occur with respect to a rule or a regulation. Upon this record, substance will prevail over semantics and the attempt of the defendants to set policy in the area of office-based surgeries cannot be legally permitted (see, Rapp v Carey, 44 NY2d 157).

. Medical professional disciplinary proceedings are administered by the State Board for Professional Medical Conduct, a subdivision of DOH whose members are appointed by the Commissioner of Health. The result will be that the members of the State Board for Professional Medical Conduct appointed by the defendant Commissioner will have to decide if the professional medical standards established by the Commissioner in the Guidelines will be the standards under which doctors are judged in disciplinary proceedings. In deciding how much weight to give to the Commissioner’s Guidelines the board members will have to be mindful of Public Health Law § 230 (3) which provides, “Any member may be removed from the board at the pleasure of the commissioner.”

. If the defendants succeed in having the standards of physician practices set forth in the Guidelines become the standards of care applied by juries and judges in deciding medical malpractice actions they will have succeeded in overturning over 100 years of court precedents holding that the duty of care owed by a physician to a patient is that of the average physician within the community (PJI 2:150), or the higher standards established by physicians on a state, regional, national or international community basis (Riley v Wieman, 137 AD2d 309). In place of those standards will be standards imposed “by the 15 appointed members of an obscure administrative agency” (Boreali v Axelrod, 1987 WL 14126, *1 [Sup Ct, Schoharie County, Apr. 23, 1987], affd 130 AD2d 107, affd 71 NY2d 1).