[994 NYS2d 789]

CONCERNED HOME CARE PROVIDERS, INC., Plaintiff, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Defendants.

Supreme Court, Suffolk County, July 29, 2014

### APPEARANCES OF COUNSEL

*Eric T. Schneiderman, Attorney General*, Hauppauge (*Lori L. Pack* of counsel), for defendants.

*Ruskin Moscou Faltischek, P.C.*, Uniondale (*Douglas A. Cooper* and *Thomas A. Telesca* of counsel), for plaintiff.

### OPINION OF THE COURT

EMILY PINES, J.

The question presented herein is whether the powers delegated by the legislative branch of government to the Department of Health (DOH): (1) to expend funds and regulate financial assistance made available for health related services; (2) to enter into contracts the agency believes to be necessary and advisable to provide for the related payment for materials, equipment and services; (3) to regulate the fees charged by non-profit entities to provide for home care for the sick and disabled; and (4) to represent the State, under federal law, in securing financial benefits for medical services are sufficient authority for the implementation of an executive order and DOH regulations described below. Concerned Home Care Providers, Inc., claiming that its member organizations are financially harmed by recent executive and regulatory action limiting state funds to be expended for administrative expenses

and executive salaries have asserted that such actions by the Governor and the DOH have delved into the legislative arena and are in violation of our Constitution's mandated separation of powers.

The plaintiff in this action, Concerned Home Care Providers, Inc. (plaintiff) is a not-for-profit trade association organized and existing under New York Not-For-Profit Corporation Law. Plaintiff's 18 members, 17 of which are for-profit business entities, are home health agencies organized under article 36 of the Public Health Law which operate in and around the New York metropolitan area. Plaintiff furnishes its members with educational, technical, legislative and legal support. Plaintiff commenced this action against the New York State Department of Health (DOH) and Andrew Cuomo, as Governor of the State of New York (Governor). Plaintiff alleges, among other things, that the Governor and the DOH usurped the prerogative of the New York State Legislature in violation of the principle of separation of powers under the New York State Constitution by issuing an executive order and rules and regulations in accordance therewith, and seeks declaratory and injunctive relief.

## Factual and Procedural Background

The 2012-2013 executive budget submission by the Governor made on January 17, 2012, included a bill related to the health and mental hygiene budget which included a proposal to require certain state agencies to impose limits on state funding for executive compensation and administrative expenses of providers of services that receive state financial assistance or state-authorized payments.

On January 18, 2012, the Governor issued Executive Order No. 38 entitled "Limits on State-Funded Administrative Costs & Executive Compensation" (EO 38). EO 38 states, in relevant part:

> "1. Within ninety days of this Executive Order, the commissioner of each Executive State agency that provides State financial assistance or State-authorized payments to providers of services, including but not limited to the . . . Department of Health . . . shall promulgate regulations, and take any other actions within the agency's authority including amending agreements with such providers to address the extent and nature of a provider's administrative costs and executive compensation that shall be eligible to be reimbursed with State

financial assistance or State-authorized payments for operating expenses.

"2. Each such agency's regulations shall include but not be limited to requirements that providers of services that receive reimbursements directly or indirectly from such agency must comply with the following restrictions:

"a. No less than seventy-five percent of the State financial assistance or State-authorized payments to a provider for operating expenses shall be directed to provide direct care or services rather than to support administrative costs, as these terms are defined by the applicable State agency in implementing these requirements. This percentage shall increase by five percent each year until it shall, no later than April 1, 2015, remain at no less than eighty-five percent thereafter.

"b. To the extent practicable, reimbursement with State financial assistance or State-authorized payments shall not be provided for compensation paid or given to any executive by such provider in an amount greater than $199,000 per annum . . .

"3. A provider's failure to comply with such regulations established by the applicable state agency shall, in the commissioner's sole discretion, form the basis for termination or non-renewal of the agency's contract with or continued support of the provider. Each agency's regulations shall provide that, under appropriate circumstances and upon a showing of good cause, a provider may be granted a waiver from compliance with these or other related requirements in whole or in part subject to the approval of the applicable State agency and the Director of the Budget." (Executive Order [Andrew M. Cuomo] No. 38 [9 NYCRR 8.38].)

The bill subsequently passed by the Senate and Assembly on March 30, 2012 did not contain the Governor's original proposal to require certain state agencies to impose limits on state funding for executive compensation and administrative expenses. Thus, in passing the final budget, neither the Senate nor the Assembly actually voted on the Governor's proposal limiting state-funded administrative costs and executive compensation as said proposal had been implemented by the Governor through EO 38.

On October 31, 2012, the DOH published proposed rules and regulations as directed by EO 38. Following public comment and revisions, the DOH amended the Official Compilation of title 10 of the Codes, Rules and Regulations of the State of New York to add a new part 1002, effective July 1, 2013, entitled "Limits on Administrative Expenses and Executive Compensation," citing as statutory authority Social Services Law § 363-a (2) and sections 201 (1) (*o*) and (p) and 206 (3) and (6) of the Public Health Law, and Not-For-Profit Corporation Law § 508.

Plaintiff commenced this action on June 14, 2013, and immediately moved for a preliminary injunction. By decision and order dated July 10, 2013, this court (41 Misc 3d 278, 292-294 [2013, Pines, J.]) denied plaintiff's motion for a preliminary injunction stating, in relevant part:

> "Here, this court finds that the rules promulgated by the DOH exist both pursuant to that agency's specifically delegated statutory authority and are well within legislatively mandated policy. DOH is specifically delegated the authority to expend funds made available for health-related purposes and to regulate whatever financial assistance is granted by the state for health-related activities. (Public Health Law § 201 [1] [*o*], [p].) DOH's authority, however, does not end with such broad general powers. Rather, it continues more specifically to include the power to enter into contracts that the agency itself deems necessary and advisable to carry out its broad functions and to provide for payment for materials, equipment and services. (Public Health Law § 206 [3].) DOH, as set forth above, is again specifically authorized by statute to enter into subcontracts with nonprofit corporations established to provide home care for the sick and disabled, and to establish the specific fees charged for the services those non-profit entities render. (Public Health Law § 206 [6].) It is DOH that is delegated the authority, under federal law, to represent the state in securing financial benefits for medical purposes. (Social Security Act, tit XIX [42 USC § 1396 *et seq.*]; Social Services Law § 363-a [1].) These statutory provisions, taken together, fill in far more of the gap described in *Boreali*, between a general legislative grant of authority and specific regulations. Thus, in regulating financial assistance to be provided for health-related activities, it is DOH that has been

specifically delegated the power to enter into contracts with agencies like the plaintiff herein, specifically for the purpose of providing the services plaintiff provides, and to determine the actual fees to be charged by the plaintiff. It is the court's belief that inherent in such authority is the power to determine the terms of such contracts so long as they do not deviate from other legal authority.

"The court also finds that both Executive Order No. 38 itself and the DOH regulations are in accord with, rather than opposed to, legislative policy concerning the expenditure of funds by those corporations which are granted the benefit of not-for-profit status. As set forth above, the legislature has already stated that such entities, while maintaining the right to receive income, are only permitted to make an incidental profit, which must be applied to the operation of those activities which are deemed lawful for such entities and are not to be divided among the executives running the same. (N-PCL 508.) Thus, the legislature has already stated a policy that not-for-profit entities such as plaintiff herein are to utilize their funds for the programs they run. This is precisely what Executive Order No. 38 does in limiting nonprofits such as plaintiff from utilizing funds, over and above a set amount, for executive compensation and administrative expenses. The fact that the Governor chose Executive Order No. 38 in order to pursue this policy in his own manner, as occurred in *Bourquin* and *Clark*, does not render the order violative of the constitutionally protected doctrine of separation of powers.

"In addition, unlike the regulations in *Boreali*, the executive order and the DOH regulations did not go into effect after numerous attempts and failures to enact legislation. Rather, they were never once voted upon by the legislature and were placed in the form of an executive order for the purpose of permitting periodic administrative amendment. As set forth in *Bourquin*, legislative inaction, which may be the most that occurred in this case, is not a basis for inferring legislative disapproval.

"Moreover, the new rules contained within 10 NYCRR part 1002 did not go into effect instantaneously following their initial promulgation. Rather,

as set forth in attachments to the papers submitted by plaintiff and defendants, a 'Notice of Proposed Rule Making' was published in the State Register on both May 30, 2012, and after revisions made in response to numerous comments, again on October 31, 2012. (NY Reg, May 30, 2012 at 32-33; Oct. 31, 2012 at 42-44.) As set forth in the DOH published assessment, numerous revisions in the regulations were implemented as a result of the comments. These changes, described in the 38-page document, included, inter alia, clearly defined administrative costs as distinct from program costs; modifications to the regulations to incorporate definitions used by the Internal Revenue Service; specific examples of entities rendering program services; a definition of executive compensation to exclude those portions of a salary not attributed to a covered program; a delay in the implementation of the regulations from its original contemplated date; the exclusion of certain nonrecurring administrative expenses; and greater flexibility in the filing of waiver applications. The comments made by the affected providers were clearly taken into consideration and in many cases resulted in changes to the regulations, often in a manner suggested by the commentators. The court raises this issue not to opine on the appropriateness of the changes, but only to confront the factor of 'lack of expertise' raised by the Court of Appeals in *Boreali*. Here, DOH cannot be said to have written on a clean slate. Rather it took many comments of the providers of health-related services into account in revising the subject regulations."

In motion sequence 003, the defendants move to dismiss the plaintiff's complaint pursuant to CPLR 3211 (a) (3) on the ground that the plaintiff lacks standing to bring this action and CPLR 3211 (a) (7) on the ground that the amended verified complaint fails to state a cause of action. Defendants argue, among other things, that the plaintiff lacks standing to bring this action because the regulations at issue do not apply to it as it does not actually provide any program services as defined in the regulations nor does it have a direct relationship with the DOH or Governor. Rather, plaintiff is only a trade association whose members are home health agencies organized under article 36 of the Public Health Law which operate in and around the New York metropolitan area. Additionally, the defendants

argue (1) the Governor did not exceed his executive powers because EO 38 is a clear implementation of the state legislative policy of ensuring that taxpayer funds are utilized in the most effective and efficient manner, (2) the DOH did not exceed its administrative powers in adopting the regulations at issue as its statutory authority derives from sections 201 and 206 of the Public Health Law, as well as section 363-a of the Social Services Law, and (3) the DOH regulations are a rational approach to protecting New York State taxpayers.

The plaintiff opposes defendants' motion to dismiss and, despite the fact that issue has not been joined, plaintiff cross-moves for summary judgment (motion sequence 004). Plaintiff argues, among other things, that the Governor, in promulgating EO 38, and the DOH, in adopting regulations in accordance therewith, went beyond the scope of any enabling statute and usurped the prerogative of the legislature in violation of the principle of separation of powers under the New York State Constitution.

In response, despite not having joined issue, the defendants made a separate motion for summary judgment (motion sequence 005).

## Discussion

### Standing

█ Initially, contrary to the defendants' contention, the plaintiff has standing as an organization to bring this action. Plaintiff's members would themselves have standing to bring this action as they are within the zone of interest to be protected by the regulations and claim to suffer injury from administrative action (*see Matter of Dental Socy. of State of N.Y. v Carey*, 61 NY2d 330, 334 [1984] [society comprised of medical providers has standing to challenge Medicaid reimbursement schedules as providers are subject to pecuniary loss if adequate Medicaid reimbursement schedules not established]). Additionally, the interests sought to be protected by this action are germane to the plaintiff's purpose of providing legislative and legal support to its members, the trade association is an appropriate organization to act in a representative capacity, and the participation of individual home health agencies is not required (*see id.*). Accordingly, plaintiff has standing to maintain this action.

### Summary Judgment

In light of the procedural course charted by the parties in having made motions for summary judgment although issue has

not been joined, the court will decide the remaining issues to the motions for summary judgment.

A party moving for summary judgment has the burden of making a prima facie showing of entitlement to judgment as a matter of law, offering sufficient evidence demonstrating the absence of any material issues of fact (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]; *Zuckerman v City of New York*, 49 NY2d 557 [1980]). Once a prima facie showing has been made by the movant, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish material issues of fact which require a trial (*see Zayas v Half Hollow Hills Cent. School Dist.*, 226 AD2d 713 [2d Dept 1996]). The key for the court on a motion for summary judgment is issue finding, not issue determination, and the court should not determine issues of credibility (*S.J. Capelin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338, 341 [1974]; *Cerniglia v Loza Rest. Corp.*, 98 AD3d 933, 935 [2d Dept 2012]). Since summary judgment is the procedural equivalent of a trial, the motion should be denied if there is any doubt as to the existence of a triable issue or when a material issue of fact is arguable (*Salino v IPT Trucking*, 203 AD2d 352 [2d Dept 1994]).

As explained by the Court of Appeals in *Boreali v Axelrod* (71 NY2d 1, 9 [1987]), a case reviewing regulatory restrictions on smoking in a narrow class of public locations:

> "While the separation of powers doctrine gives the Legislature considerable leeway in delegating its regulatory powers, enactments conferring authority on administrative agencies in broad or general terms must be interpreted in light of the limitations that the Constitution imposes (NY Const, art III, § 1).
>
> "However facially broad, a legislative grant of authority must be construed, whenever possible, so that it is no broader than that which the separation of powers doctrine permits (*see*, Tribe, American Constitutional Law § 5-17, at 288-289). Even under the broadest and most open-ended of statutory mandates, an administrative agency may not use its authority as a license to correct whatever societal evils it perceives (*see, e.g., Matter of Council for Owner Occupied Hous. v Abrams*, 125 AD2d 10)."

The issue of whether regulatory authority has been properly exercised should be analyzed under the conceptual framework set forth in *Boreali* (*Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City*

*Dept. of Health & Mental Hygiene*, 23 NY3d 681 [2014]). As recently explained by the Court of Appeals in that case, involving New York City agencies' ban prohibiting restaurants, movie theaters and other food service establishments from serving sugary drinks in sizes larger than 16 ounces:

> "*Boreali* sets out four 'coalescing circumstances' present in that case that convinced the Court 'that the difficult-to-define line between administrative rule-making and legislative policy-making ha[d] been transgressed.' (*Boreali*, 71 NY2d at 11.) We explained that '[w]hile none of these circumstances, standing alone, is sufficient to warrant the conclusion that the [Public Health Council] has usurped the Legislature's prerogative, all of these circumstances, when viewed in combination, paint a portrait of an agency that has improperly assumed for itself the open-ended discretion to choose ends' that is the 'prerogative[ ] of [a] Legislature' (*id.* at 11, 18 [internal quotation marks and square brackets omitted]).

> "As the term 'coalescing circumstances' suggests, we do not regard the four circumstances as discrete, necessary conditions that define improper policy-making by an agency, nor as criteria that should be rigidly applied in every case in which an agency is accused of crossing the line into legislative territory. Rather we treat the circumstances as overlapping, closely related factors that, taken together, support the conclusion that an agency has crossed that line. Consequently, respondents may not counter petitioners' argument merely by showing that one *Boreali* factor does not obtain.

> "Any *Boreali* analysis should center on the theme that 'it is the province of the people's elected representatives, rather than appointed administrators, to resolve difficult social problems by making choices among competing ends' (71 NY2d at 13). The focus must be on whether the challenged regulation attempts to resolve difficult social problems in this manner. That task, policymaking, is reserved to the legislative branch." (*New York Statewide Coalition of Hispanic Chambers of Commerce*, 23 NY3d at 696-697.)

The *Boreali* factors are (1) "a regulatory scheme laden with exceptions based solely upon economic and social concerns"

demonstrating that the agency acted on its own idea of public policy, (2) where the agency "wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance," (3) agency action "in an area in which the Legislature had repeatedly tried—and failed—to reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions," and (4) whether the development of the rules required expertise of the agency (*Boreali* at 11-14).

Here, based upon the analysis of the *Boreali* factors as set forth in this court's decision and order dated July 10, 2013, as well as the additional analysis that follows, the defendants' motion for summary judgment (motion sequence 005) is granted, the plaintiff's cross motion for summary judgment (motion sequence 004) is denied, and the amended verified complaint is dismissed. Defendants' motion to dismiss pursuant to CPLR 3211 (motion sequence 003) is denied as academic.

The plaintiff concedes, as it must, that Public Health Law §§ 201 and 206, as well as Social Services Law § 363-a, provide general authority to the DOH to regulate the financial assistance granted by the State in connection with all public health activities, receive and expend funds made available for public health purposes, enter into contracts with entities to provide home health care, and to supervise the administration of a plan for medical assistance, as required by title XIX of the Federal Social Security Act. Thus, unlike *Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene* (23 NY3d 681 [2014]), upon which the plaintiff relies, the instant case is one in which "the basic policy decisions underlying the [challenged] regulations have been made and articulated by the Legislature" (*Bourquin v Cuomo*, 85 NY2d 781, 785 [1995], quoting *Matter of New York State Health Facilities Assn. v Axelrod*, 77 NY2d 340, 348 [1991]). Thus, the Governor and the DOH did not write "on a clean slate, creating [their] own comprehensive set of rules without benefit of legislative guidance" (*Boreali v Axelrod*, 71 NY2d 1, 13 [1987]). Rather, as authorized by the authority derived from the aforementioned statutes, the DOH "merely fill[ed] in the details of broad legislation describing the over-all policies to be implemented" (*id.*). Regulation by DOH of the amount and/or percentage of state funds or state-authorized payments that can be used to pay executive compensation and administrative expenses clearly fulfills its statutory mandate to regulate the financial assistance provided by the State in con-

nection with public health care activities. "Where an agency has been endowed with broad power to regulate in the public interest, we have not hesitated to uphold reasonable acts on its part designed to further the regulatory scheme" (*Matter of Campagna v Shaffer*, 73 NY2d 237, 242 [1989]; *see e.g. Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn.*, 40 Misc 3d 1062 [Sup Ct, NY County 2013]).

It must be emphasized that the regulations at issue in this case only limit the amount of *state funds or state-authorized payments* that can be used for executive compensation and administrative expenses. They do not in any way restrict or limit the use of other funds or payments for executive compensation or administrative expenses. Thus, the regulations do not truly cap executive compensation or administrative expenses of entities that receive state funds or state-authorized payments. They only limit the amount of state funds or state-authorized payments that entities can use for such purposes. These regulations are a far cry from the extensive bans found unlawful in *Boreali* and *Matter of New York Statewide Coalition*.

Although, as emphasized by the plaintiff, the regulations at issue contain exceptions and allow the DOH to grant waivers from the limitations, the "coalescing circumstances" set out in *Boreali* are overlapping and must be taken together (*see Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene*). When the *Boreali* circumstances are viewed in combination with regard to EO 38 and the DOH regulations issued in accordance therewith, they support the conclusion that the principle of separation of powers has not been violated. As so aptly stated by Judge Abdus-Salaam in her concurring opinion in *Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene* (23 NY3d at 701-702):

> "Importantly, in concluding that the Board exceeded the bounds of its health-related regulatory authority, the majority does not give dispositive effect to any single aspect of the Board's conduct (*see* majority op at 696-697) . . . . I do not understand the majority to establish any rigid decisional framework to be applied mechanically to other actions undertaken by the Board or separate administrative agencies in the future."

Accordingly, the defendants' motion for summary judgment (motion sequence 005) is granted, the plaintiff's cross motion

for summary judgment (motion sequence 004) is denied, and the amended verified complaint is dismissed. Defendants' motion to dismiss pursuant to CPLR 3211 (motion sequence 003) is denied as academic.