Matter of Mahopac Cent. Sch. Dist. v New York State Educ. Dept. (2025 NY Slip Op 04214)

Matter of Mahopac Cent. Sch. Dist. v New York State Educ. Dept.

2025 NY Slip Op 04214

Decided on July 17, 2025

Appellate Division, Third Department

Reynolds Fitzgerald, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 17, 2025

CV-25-0492

[*1]In the Matter of Mahopac Central School District et al., Respondents,
v
New York State Education Department et al., Appellants, et al., Respondents.

Calendar Date:May 29, 2025

Before: Garry, P.J., Clark, Lynch, Reynolds Fitzgerald and McShan, JJ.

Letitia James, Attorney General, Albany (Joseph M. Spadola of counsel), for appellants.
Thomas, Drohan, Waxman, Petigrow & Mayle, LLP, Hopewell Junction (Steven L. Banks of counsel), for Mahopac Central School District and another, respondents.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Julian Schreibman, J.), entered March 10, 2025 in Albany County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent State Education Department sustaining a complaint against petitioners.
S.R. is an individual with disabilities, including autism. During the 2023-2024 school year, he and his parents resided within the Mahopac Central School District.[FN1] Petitioners' Committee on Special Education [FN2] (hereinafter the CSE) recommended an individualized educational program (hereinafter IEP)[FN3] for S.R. which provided for placement at a private residential school. At the time of the IEP, petitioners were obligated to remit payment for S.R.'s placement at the private residential school pursuant to the federal mandates of the Individuals with Disabilities Education Act (see 20 USC § 1400 et seq. [hereinafter IDEA]) and the state Education Law. S.R. turned 21 years old prior to the end of the 2023-2024 school year and petitioners notified the concerned parties that S.R.'s entitlement to services would terminate at the end of that school year. Thereafter, petitioners conducted an exit interview confirming their position.
In September 2024, S.R.'s parents filed a complaint (see 8 NYCRR 200.5 [l] [1]) with respondent State Education Department (hereinafter SED) alleging that S.R. was not receiving the free and appropriate public education (hereinafter FAPE) to which he was entitled under the IDEA due to petitioners' refusal to provide education services through S.R.'s entire 21st year. SED sustained the complaint, finding that under the IDEA, petitioners were required to provide S.R. with a FAPE until the day before his 22nd birthday and directed petitioners to take measures to do so. Thereafter, petitioners commenced this CPLR article 78 proceeding against, among others, SED and respondents Commissioner of Education and Janice Zaengle, the regional associate of SED (hereinafter collectively referred to as the state respondents). While petitioners concede that the IDEA generally provides that education services continue through a student's 21st year, they point to the specific language therein that provides a "carve out" for states that have a law or policy terminating services at an earlier age. Petitioners contend that New York has such a law, and as such they may terminate services when the student reaches age 21 in compliance with the IDEA. They further argue that the state respondents violated their own policy as well as the separation of powers doctrine in rendering its determination. Supreme Court granted the petition and annulled said determination. The state respondents appeal.
"The IDEA offers states federal funds to assist in educating children with disabilities. In exchange, a state pledges to comply with a number of statutory conditions, including an obligation to provide a FAPE to all eligible children" (Matter of Elmira City Sch. Dist[*2]. v New York State Educ. Dept., 204 AD3d 1134, 1138 [3d Dept 2022] [internal quotation marks, brackets, ellipses and citation omitted]). A FAPE shall be "available to all children with disabilities . . . between the ages of 3 and 21, inclusive" (20 USC § 1412 [a] [1] [A]). However, this mandate does not apply to children with disabilities "aged 3 through 5 and 18 through 21 in a [s]tate to the extent that its application to those children would be inconsistent with [s]tate law or practice, or the order of any court, respecting the provision of public education to children in those age ranges" (20 USC § 1412 [1] [B] [i]). Education Law § 4402 (5) provides that
"a child with a disability who reaches the age of [21] during (a) the period commencing with the [1st] day of July and ending on the [31st] day of August shall if otherwise eligible, be entitled to continue in a July and August program until the [31st] day of August or until the termination of the summer program, whichever shall first occur; or (b) the period commencing on the [1st] day of September and ending on the [30th] day of June shall be entitled to continue in such program until the [30th] day of June or until the termination of the school year, whichever shall first occur."
For purposes of background in this matter, in 2021 the US Court of Appeals for the Second Circuit affirmed a District Court ruling that the state of Connecticut must provide a FAPE to students for their entire 21st year (see A.R. v Connecticut State Bd. of Educ., 5 F4th 155 [2d Cir 2021]). The Second Circuit affirmed relying on two bases. First, that the word "inclusive" means that the relevant period begins on a person's 3rd birthday and ends on the last day of his or her 21st year. Secondly, and more relevant to this matter, that the various adult education programs provided by Connecticut constituted a free "public education" within the meaning of IDEA, thus triggering an obligation to provide a comparable FAPE to disabled students between the ages of 21 and 22 who had not yet received a high school diploma (see L.T. v New York City Dept. of Educ., 2025 WL 896842, *3, 2025 US Dist LEXIS 54240 [SD NY 2025]). In 2023, SED issued a formal opinion of counsel regarding the applicability of A.R. in New York. The opinion states that the decision in A.R.
"requires that public schools in New York provide special education and related services to resident students with disabilities until age 22, or the day before the student's 22nd birthday. . . . New York State law defining eligibility for special education is materially indistinguishable from the Connecticut law challenged in A.R. Education Law § 4402 (5) provides that eligibility for special education services lasts only until the conclusion of the school year in which a student turns 21. Additionally, New York, like Connecticut, offers publicly funded adult education programs to non-disabled students in this age group. As such, the holding of A.R. that the interaction [*3]between federal law (IDEA) and [s]tate law (services for adults) required public schools in Connecticut to provide special education and related services to resident students with disabilities at least until their 22nd birthdays is equally applicable in New York" (SED Formal Opinion of Counsel No. 242 [July 6, 2023], available at https://www.counsel.nysed.gov/opinions [footnote omitted; emphasis added]).
This opinion served as the basis for SED's determination sustaining S.R.'s parents' complaint.
Supreme Court granted the petition and annulled SED's determination based on procedural grounds. Initially, the state respondents contend that Supreme Court erred in accepting petitioners' argument that the state violated its own complaint procedures from the onset by accepting and deciding the initial complaint as S.R. did not qualify as a "student with a disability"[FN4] because he was already 21 years old. We agree. The regulations governing the complaint procedures for students with a disability provide that "[a]n . . . individual . . . may file a signed written complaint . . . [which] must include: (a) a statement that the school district or the [SED] has violated a [f]ederal or [s]tate law or regulation relating to the education of students with disabilities; and (b) the facts upon which the statement is based" (8 NYCRR 200.5 [l] [1] [i], [ii] [a] [b]). "The complaint must allege a violation that occurred not more than one year prior to the date that the [s]tate complaint is received" (8 NYCRR 200.5 [l] [1] [iii] [a]). Here, S.R.'s parents comported with the regulations by filing the complaint within one year of the termination of S.R.'s education services, alleging that petitioners violated federal law by failing to provide education services to S.R. until he reached 22 years of age and seeking prospective equitable relief in the form of continuation of S.R.'s education services. Nothing in the state's complaint procedures support Supreme Court's strict and narrow interpretation that the student at issue be less than 21 years of age. It is undisputed that the IDEA is a remedial statute intended to protect the rights of a student with disabilities to a free education. The complaint process is designed to provide an avenue to remedy a claimed deprivation of a state or federal right to a FAPE. The procedure to remedy this objective should not be narrowly interpreted so as to defeat the objective. Here, there is an alleged injury-in-fact that is redressable by providing further education. If it is found that this cannot be addressed, the Legislature would have created a right without a remedy (see E.M. v New York City Dept. of Educ., 758 F3d 442, 451, 457 [2d Cir 2014]; Burr v Sobol, 888 F2d 258, 259 [2d Cir 1989], cert denied 494 US 1005 [1990]). Moreover, courts allow "[c]ompensatory education," which is defined as "prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy [*4]for any earlier deprivations in the child's education" (Somoza v New York City Dept. of Educ., 538 F3d 106, 109 n 2 [2d Cir 2008] [citation omitted]). Accordingly, we find that Supreme Court erroneously concluded that the state respondents violated their own complaint procedures.
The state respondents also assert that Supreme Court erred in determining that they violated the separation of powers doctrine. "The concept of the separation of powers is the bedrock of the system of government adopted by this State in establishing three coordinate and coequal branches of government, each charged with performing particular functions" (Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv., 27 NY3d 174, 178 [2016] [internal quotation marks and citations omitted]).
"The principle requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies. Agencies, as creatures of the Legislature, act pursuant to specific grants of authority conferred by their creator. . . . If an agency promulgates a rule beyond the power it was granted by the [L]egislature, it usurps the legislative role and violates the doctrine of separation of powers" (Matter of LeadingAge N.Y., Inc. v Shah, 32 NY3d 249, 259-260 [2018] [internal quotation marks and citations omitted]).
However, "[w]here an agency has been endowed with broad power to regulate in the public interest, we have not hesitated to uphold reasonable acts on its part designed to further the regulatory scheme" (Matter of Campagna v Shaffer, 73 NY2d 237, 242 [1989] [internal quotation marks and citation omitted]).
The Legislature granted the Commissioner of Education extremely broad authority to act in relation to the state education system, including the duty to "enforce all general and special laws relating to the educational system of the state and execute all educational policies" (Education Law § 305 [1]). Additionally, the Commissioner
"shall have general supervision over all schools and institutions which are subject to the provisions of this chapter, or of any statute relating to education, and shall cause the same to be examined and inspected, and shall advise and guide the school officers of all districts and cities of the state in relation to their duties and the general management of the schools under their control" (Education Law § 305 [2]).
Thus, SED has the authority to examine federal and state law, along with cases interpreting said laws, in an effort to ensure compliance with federal law and to advise and guide school districts accordingly. Here, SED did exactly that. Relying on existing case law, including a case from the Second Circuit that explicitly found that, if a state provides public education classes aimed at the attainment of a secondary education to nonlearning-disabled students, it must provide the same — no more or less — to learning disabled students up to the age of 22[*5]. As SED did not exceed its regulatory policymaking authority and was not engaged in improper legislating (see Education Law § 305 [1]), Supreme Court erred in concluding that SED violated the separation of powers doctrine (see Matter of LeadingAge N.Y., Inc. v Shah, 32 NY3d at 266-267; Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn., 25 NY3d 600, 613 [2015]).
Because we have found Supreme Court's reasoning for granting the petition to be in error, we now address the merits of the issue before us. Initially, we note that there is no dispute between the parties that IDEA covers students until age 22, nor do the parties disagree that Education Law § 4402 (5) terminates a disabled student's entitlement to receive services at the end of the school year during which the student turns 21. Given this conflict, typically federal law would prevail (see Scaletta v Michels Power, Inc., 236 AD3d 1, 4 [3d Dept 2025], appeal dismissed 43 NY3d 981 [2025]; Matter of Quigley v Village of E. Aurora, 193 AD3d 207, 210-211 [3d Dept 2021], lv denied 37 NY3d 908 [2021]). However, as this federal law specifically provides an exception for states with conflicting law, the question before us is whether SED's use of the holding of A.R. v Connecticut State Bd. of Educ. and the analysis found therein as the basis for its formal opinion No. 242, and its subsequent reliance thereon in directing schools to provide special education services through a student's entire 21st year, is arbitrary and capricious.
"Where, as here, an administrative determination is made where an evidentiary hearing is not required by law, this Court's review is limited to whether the determination had a rational basis and was not arbitrary and capricious" (Matter of Froehlich v New York State Dept. of Corr. & Community Supervision, 179 AD3d 1408, 1409-1410 [3d Dept 2020] [citations omitted], appeal dismissed 35 NY3d 1031 [2020]; see Matter of Hammonds v New York State Educ. Dept., 206 AD3d 1334, 1335 [3d Dept 2022]). "The arbitrary or capricious test chiefly relates to whether a particular action should have been taken or is justified and whether the administrative action is without foundation in fact. Arbitrary action is without sound basis in reason and is generally taken without regard to the facts" (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974] [internal quotation marks, ellipsis and citation omitted]; see Matter of John E. Andrus Mem., Inc. v Commissioner of Health of the N.Y. State Dept. of Health, 225 AD3d 959, 961 [3d Dept 2024]). "So long as it has a rational basis, we will sustain the determination, even if it would have also been rational for the administrative agency to have reached a different result" (Matter of Froehlich v New York State Dept. of Corr. & Community Supervision, 179 AD3d at 1410 [citations omitted]; see Matter of Saratoga Economic Dev. Corp. v State of N.Y. Auths[*6]. Budget Off., 222 AD3d 1072, 1074 [3d Dept 2023], lv denied 41 NY3d 910 [2024]).
Federal courts have recently assessed the meaning of "inconsistent with [s]tate law or practice" as found in the IDEA, in relation to the application of public education to students without disabilities until they reach age 22, i.e., adult education, in light of the IDEA's purpose "to ensure equivalent educational opportunities for students with and without disabilities" (K.O. v Jett, 2023 WL 5515981 *1, 2023 US Dist LEXIS 149745, *1 [D Mn 2023] [internal quotation marks and citation omitted]). In doing so, these courts have determined that "[a] state's provision of public education for students from age 18 through age 21 triggers the IDEA's FAPE mandate for students with disabilities in the same age range" (id. [internal quotation marks, ellipsis and citation omitted; emphasis added]). Thus, the issue distills down to the definition of the term "public education." Within the context of the IDEA, Federal courts have now come to define "public education" as "one that is provided: (1) at public expense through significant state or local governmental funding; (2) under the administration, supervision or oversight of state educational agencies; and (3) with the objective of educating students up to the level of academic proficiency associated with the completion of secondary school" (A.R. v Connecticut State Bd. of Educ., 5 F4th at 164 [internal quotation marks and citation omitted]; see K.L. v Rhode Island Bd. of Educ., 907 F3d 639, 647 [1st Cir 2018]; E.R.K. ex rel. R.K. v Hawaii Dept. of Educ., 728 F3d 982, 987-988 [9th Cir 2013]).
The record reveals that the adult education programs offered in New York, i.e., the General Educational Development (hereinafter GED) and National External Diploma Program (hereinafter NEDP) programs, possess sufficient attributes of public education to qualify under the IDEA. As to public funding, "[i]n 1984, the New York State Legislature enacted the Employment Preparation Education Program (EPE) to provide State aid to public schools and Boards of Cooperative Educational Services (BOCES) to support adult education programs. The EPE program supports over 200,000 adults annually with more than $90 million" (SED Employment Preparation Education Manual, at 4 available at https://www.acces.nysed.gov/aepp/employment-preparation-education; see Education Law § 3602 [11]). Additionally, there is no cost for individuals to take the NEDP, nor is there a fee to take the GED test.
With respect to state oversight, "[t]he school or BOCES must submit to [SED] for approval a [c]omprehensive [p]lan of [s]ervice . . . detailing the programs that will be provided, the number of students to be served and the number of contact hours that are anticipated to be generated on an annual basis" (SED Employment Preparation Education Manual, at 4; see Education Law § 3602 [11]). Additionally, all curricula in the EPE programs "must follow [SED's] established frameworks[*7]. This means that curricula should be consistent with the College and Career Readiness Standards (CCR) and targeted toward the achievement of National Reporting System (NRS) goals and outcomes. Curricula should be maintained on site and be made available to [SED] during monitoring visits" (SED Employment Preparation Education Manual, at 5-6). Further, all GED testing centers and staff must be approved by SED, and examiners and test center coordinators must complete SED training.
Lastly, regarding the objective of educating students up to the level associated with completion of secondary schools, both the NEDP and GED programs fulfill this criterion. The NEDP "is a competency-based program that allows adults to demonstrate transferable skills for which a NYS High School Equivalency (HSE) diploma . . . is awarded as approved by the New York State Board of Regents" (SED Employment Preparation Education Manual, at 16). It is a "flexible, self-directed, web-based program where the reading, writing, math and workforce readiness skills of participants are assessed through a series of tasks to earn a NYS HSE diploma. Tasks are meant to demonstrate high school level skills that parallel job and life situations" (SED Employment Preparation Education Manual, at 16). The GED program assists individuals preparing to take the GED test. The GED test includes subject matters equivalent to that of graduating high school seniors, including reasoning through language arts (RLA), social studies, science and mathematical reasoning (see 8 NYCRR 100.7 [a] [2] [i]). The GED test will allow an individual to receive a high school equivalency diploma conferred by the state (see 8 NYCRR 3.47 [a] [2] [ii] [c]). The GED test is available to individuals 16 years of age and older meeting various contingencies (see 8 NYCRR 100.7 [a] [1]). Based on the foregoing, to ensure equivalent education opportunities for students with and without disabilities, SED's determination that a school district should provide education services to students with disabilities until age 22 has a sound basis in reason and is supported by the record, and, thus, is not arbitrary and capricious (see Matter of John E. Andrus Mem., Inc. v Commissioner of Health of the N.Y. State Dept. of Health, 225 AD3d at 962; Matter of Fuller v New York State Dept. of Health, 127 AD3d 1447, 1449 [3d Dept 2015]). The parties' remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be lacking in merit.
Garry, P.J., Clark, Lynch and McShan, JJ., concur.
ORDERED that the judgment is reversed, on the law and the facts, without costs, and petition dismissed.

Footnotes

Footnote 1: Petitioner Mahopac Central School District is governed by petitioner Board of Education of the Mahopac Central School District.
Footnote 2: The Committee on Special Education is a multidisciplinary team established to ensure the timely evaluation and placement of students (see 8 NYCRR 200.1 [k]; Education Law § 4402 [b] [1]).
Footnote 3: An IEP is a written statement prepared annually by a team of individuals setting forth a plan to meet the unique educational needs of a student with a disability. The IEP contains statements addressing the student's special education needs, related services and supplementary aids, as well as program modifications or supports for school personnel. An IEP includes current and comprehensive multidisciplinary evaluations and progress reports (see 8 NYCRR 200.1 [y]; 20 USC 1414 [d] [1] [A] [i] [iv]).

Footnote 4: New York defines a student with a disability as a student "who has not attained the age of 21 prior to September 1st and who is entitled to attend public schools pursuant to [Education Law § 3202] and who, because of mental, physical or emotional reasons, has been identified as having a disability and who requires special services and programs" (8 NYCRR 200.1 [zz]; see Education Law § 4401).